**UNITED STATES of America**

v.

**CODE PRODUCTS CORPORATION et al.**
**Sally Sheerr, Appellant.**
**No. 15672.**

United States Court of Appeals
Third Circuit.

Argued April 21, 1966.

Decided June 28, 1966.

Sol Spiegel, Philadelphia, Pa., for appellant.

Walter Stein, Philadelphia, Pa., Berger & Stein, Philadelphia, Pa., of counsel, for appellees.

Before KALODNER, HASTIE and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

Did the District Court improvidently exercise its discretion in the allowances made to the Receiver and his counsel as compensation for their services in the instant receivership proceeding?

That is the single question presented on this appeal from the Order of the District Court insofar as it awarded $10,000 and $11,000, respectively, to Francis T. Anderson, Esq., Receiver, and Walter Stein, Esq., his counsel, in addition to interim allowances of $8,000 each received in the course of the receivership.

The appellant, Sally Sheerr, held a first mortgage on 4566 Baker Street, Philadelphia, Pa., the receivership's prime asset. The District Court in its Order directed payment to her of $41,613.52 upon her claim of $83,680.00 as the mortgagee.[1]

The sum of the appellant's position is that (1) the receivership benefited little, if any, by reason of the services of the Receiver and his counsel; (2) they duplicated their services; (3) the allowances made to the Receiver and his counsel were "excessive" in relation to the results which they accomplished and to the size of the receivership estate; and, (4) they submitted inadequate proofs as to their services.

In reply, the Receiver and his counsel urge that the record establishes that the District Court properly exercised its discretion in making the challenged allowances.

These undisputed facts may be preliminarily stated before proceeding to a discussion of the issue presented:

The instant receivership proceeding was instituted by the United States [2] on August 6, 1957, against the Code Products Corporation ("Code") and other defendants, to enforce federal tax liens against Code's properties, and to determine the validity and priorities of the other claims and liens against the properties. The Receiver was appointed on August 27, 1957 and his counsel on October 3, 1957.

The receivership estate consisted of four pieces of property and some machinery owned by Code. Three of the properties were sold for a total of $14,830 during the first three years of the receivership; the fourth, a factory building, at 4566 Baker Street, Philadelphia, Pa., was sold in May, 1964, for $87,000. The machinery owned by Code was sold at the same time for $1,000.

In addition to the $102,830 realized through these sales the Receiver collected $83,287 in rentals, and some miscellaneous income which swelled the total of gross receipts of the receivership to $188,246.[3] Of this total, $109,633 was disbursed in operating expenses and allowances to prior claimants other than the parties here; the $78,613 remaining was distributed as follows: a total of $37,000 to the Receiver and his counsel— $18,000 and $19,000 respectively—and $41,613 to the appellant on her first mortgage lien claim of $83,680, as set forth in note 1.

In its Opinion "Sur Petitions for Allowances", the District Court noted that "the receiver was not authorized to, and did not, carry on the business of the debtor [Code]"; the property at 4566 Baker Street "was an untenanted factory building badly in need of repairs", and "Its value at the time the receiver took possession may be taken as $60,000 to $70,000."

The allowances made to the Receiver and his counsel were premised in most part on their claimed services in connection with the problems attendant to the renting and ultimate sale of the Baker Street property.

Counsel for the Receiver in his Petition for Compensation stated that in the course of the receivership (almost seven years) he, "and his law firm, together with receiver have spent approximately 740 hours." The Receiver, in his Petition, stated that he "devoted in excess of

---

1. The District Court had earlier held that the Sheerr mortgage was a first lien on the Baker Street property to the extent of $55,204.95 plus interest on that amount from January 27, 1955. 216 F.Supp. 281 (E.D.Pa.1963).

2. The action was pursuant to 26 U.S.C.A. Sec. 7403(d), 68A Stat. 874, which provides that a district court may appoint a receiver in equity in an action filed by the United States to enforce a federal tax lien.

3. The District Court in its unreported Opinion "Sur Petitions for Allowances" stated that the "gross revenues amounted to $189,000", and counsel for the parties have also done so. The Receiver's "State of Revenues and Expenditures for the period March 1958 to July 15, 1964" establishes, however, the correct amount of gross revenues to be $188,246. The Receiver, incidentally, reported gross revenues at $197,046, in clear duplication of an item of $8,800.

700 hours" and that "his counsel's activity encompasses the same general activity as that of your petitioner, who has worked with his counsel most closely throughout in creating and preserving the estate."

The appellant says that one Morgan J. Lewis, Code's principal stockholder, was largely responsible for the leasing and ultimate sale of the Baker Street property and that the Receiver and his counsel were not entitled to more than their $8,-000 interim allowances.

On the latter score, it must be noted that the United States also objected below to the District Court's additional allowances of $10,000 and $11,000 respectively, to the Receiver and his counsel, on the ground that "the $8,000.00 heretofore paid to each was full, sufficient and reasonable compensation for the services of each."

The record discloses that Lewis was largely instrumental in the creation of the $83,287 rentals and the sale of the Baker Street property. He had conducted Code's operations in the Baker Street property—the manufacture of a patented box to house outdoor electric meters—prior to their cessation before the commencement of the receivership proceedings. He owned the patents to the meters and was desirous of procuring someone to continue the manufacturing operations at the Baker Street property. In 1958 he procured a tenant who signed a three-year lease for the property at an annual rental of $20,000, with an option to purchase the property at a price in excess of $200,000. When the lease expired in 1961, and the option was not exercised, he, together with others, leased the property for a one-year term at a rental of $15,000. At the end of that period, he was allowed to remain despite the fact that he paid almost no rental over the next 22 months. He alone, in May 1964, procured the purchaser of the Baker Street property and the machinery in it owned by Code.

The record further establishes that the Receiver did little, if anything in the administration of the receivership estate other than to review with his counsel, from time to time, the latter's report as to Lewis' activities in connection with the leasing and later sale of the Baker Street property. Apart from these conferences with his counsel, the Receiver, according to his testimony visited the Baker Street property only five times, and that was prior to the appointment of counsel. Lewis testified that he only saw the Receiver several times during negotiations for the sale of the three small properties and that his contacts were virtually entirely with the Receiver's counsel.

The Receiver made no specification in his Petition for Compensation with respect to what he did in the "excess of 700 hours" for which he claimed compensation, contenting himself with the generalization, earlier stated, that his activities encompassed "the same general activity" as that of his counsel.

Counsel's Petition for Compensation and the record disclose that most of his claimed 740 hours of service were devoted to work which is normally that of a Receiver. There were no legal actions for the collection of assets. Counsel, however, participated to a limited extent in the proceedings relating to the priority claims of the appellant and others. 216 F.Supp. 281.

The District Court's following statement, in its Opinion, with reference to the administration and liquidation of the receivership, borne out by the record, is most illuminating:

"From the standpoint of what was accomplished by this receivership, *it may be said that it was not conspicuously successful nor was it in any sense disastrous. The assets were finally sold for more than could have been realized had they been immediately liquidated, but not a great deal more.* * * * So far as the Government's tax claim, to enforce which the proceeding was brought, is concerned, it was at the end of the receivership worth exactly what it was when the proceeding was begun, *namely, nothing.*" (Emphasis supplied.)

The record amply supports that statement. The United States, it discloses, received only $600 of the $1,000 realized through the sale of Code's machinery, since it was charged with $400 "administration expense."

It may be noted, parenthetically, that proceeds of the sale of other machinery in the Baker Street property which belonged to one Robert Sheerr, were independently paid to him by the purchaser. Sheerr, it may be noted, was allowed $59,616, by the District Court, "for the rental value of [his] machinery used by the Receiver" during the course of the receivership.

These principles are well-settled:

■ Federal courts "in fixing allowances for services to court officers, should be most careful, and * * * *vicarious generosity in such a matter could receive no countenance.*" In re Gilbert, 276 U.S. 294, 296, 48 S.Ct. 309, 310, 72 L.Ed. 580 (1928). (Emphasis supplied.)

■ While the allowance of fees in an equity proceeding "is confided to the discretion of the district court the exercise of that discretion is subject to review on appeal and when the court has fallen into error which amounts to an abuse of discretion relief will be granted." Coskery v. Roberts & Mander Corp., 200 F.2d 150, 154 (3 Cir. 1952).

■ In allowing fees "the considerations are the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." Coskery v. Roberts & Mander Corp., supra at page 154.

■ "[D]uplicate services are not to be charged against an estate in receivership," and "[i]f counsel performed work which was properly the responsibility of the receivers that fact must be taken account of in fixing the compensation of the latter * * *." Coskery v. Roberts & Mander Corp., supra at page 155.

■ Applying the principles stated to the instant case, we are of the opinion, on review of the record, that the District Court improvidently exercised its discretion in allowing additional compensation of $10,000 and $11,000, respectively, to the Receiver and his counsel.

To begin with, as the District Court said, the receivership "was not conspicuously successful" since its assets were finally sold for "not a great deal more" than they would have brought "had they been immediately liquidated". And, as the District Court further found, "so far as the Government's tax claim, to enforce which the proceeding was brought, * * it was at the end of the receivership worth exactly what it was when the proceeding was begun, *namely, nothing.*" (Emphasis supplied.)

To that it should be added that the end result of the receivership was seriously detrimental to the appellant since she was ultimately awarded only $41,613 on her first mortgage lien of $55,205 and suffered a loss of some $28,500 accrued interest on that lien.

Thus, "the result obtained", a critical factor to be considered in the allowance of fees, was in the minus column on the performance score cards of the Receiver and his counsel.

The same is true with respect to the critical factors of "degree of activity" and "dispatch" in the conduct of this receivership.

It took almost seven years to liquidate four properties for "not a great deal more" than "could have been realized had they been immediately liquidated", as the District Court said. And at that, the sale of the receivership's principal asset was the result of the "activity" of Lewis and not of the Receiver or his counsel, as the following testimony of counsel at the hearing on the Petitions for Compensation demonstrates:

"Q. Mr. Stein, isn't it true since 1961 and up until the time when the final agreement relating to the sale of

Baker Street, the 4566 Baker Street Property was effected, that the efforts that were induced or put into the matter in order to develop the purchasers or prospective purchasers were practically the efforts of Mr. Lewis alone other than your simply listing the property for sale with the various industrial relators in Philadelphia?

"A. That was substantially accurate".

The hard fact is that the Receiver and his counsel "had nothing to do with" the efforts of Lewis "in the development of purchasers for the Baker Street property", as counsel testified at another point in his cross-examination at the hearing of the various Petitions for Compensation.

Further, insofar as the compensation claims of the Receiver and his counsel are concerned it is plainly apparent that their claimed services were "duplicate services" which "are not to be charged against an estate in receivership". On this score, it may be pointed out, the District Court conceded in its Opinion that "there was probably some duplication".

█ As far as the Receiver is concerned, it is clear that his claim for additional compensation is premised on his estimate of the time he spent with his counsel in reviewing the activities of his counsel and Lewis. The sum total of this situation that counsel in substance performed Receiver's duties, and while that factor merits consideration in fixing his counsel's compensation it does not justify duplication of compensation to the Receiver.

Our considered judgment is that the Receiver was more than adequately compensated for his services by his $8,000 interim allowance and that he was plainly not entitled to the $10,000 additional fee allowed by the District Court; further that his counsel was entitled to only an additional fee of $3,500.00 over and above his $8,000 interim allowance for his services as counsel and *de facto* receiver, and not the $11,000 additional fee granted to him.

For the reasons stated, the Order of the District Court of August 11, 1965 will be vacated and the cause remanded to the District Court with directions to enter a new Order not inconsistent with this Opinion.[4]

4. A separate Order will be entered by this Court denying the Motion to Dismiss Appeal. The Motion, premised on the contention that this Court is without jurisdiction to entertain this appeal from the District Court's Order of August 11, 1965 because it was "clearly interlocutory" is so frivolous as not to merit discussion.