UNITED STATES of America

v.

**LARCHWOOD GARDENS, INC.**, Larchwood Gardens, Inc. (Defendant) and John A. Robbins Co., Inc. (Creditor Claimant), Appellants.

Nos. 16886, 16887.

United States Court of Appeals Third Circuit.

Argued March 5, 1968.

Decided Dec. 12, 1968.

W. Bradley Ward, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Tom P. Monteverde, Philadelphia, Pa., on the brief), for appellants.

Philip Price, Philadelphia, Pa., for appellees.

Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

(James H. McHale, Carl McLaughlin, Philadelphia, Pa., on the brief for appellees N. L. Wymard and David M. Walker, Receivers for Larchwood Gardens, Inc. and James H. McHale and Robert O'Connell.)

Before HASTIE, Chief Judge, and SEITZ and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

Larchwood Gardens, Inc. is a Pennsylvania corporation organized in 1953. John A. Robbins Co., a construction company, was then and has continued to be the sole owner of Larchwood common stock. This is an appeal by those corporations from orders of the district

court determining and allowing compensation to two court appointed receivers, their attorney and their accountant.

Larchwood purchased a tract of land and built garden apartments on part of it. The construction was financed by a grant from the Commonwealth of Pennsylvania and a Federal Housing Administration insured million dollar mortgage loan from a bank. About 20 acres of the tract were not included in the housing project or covered by the mortgage.

After the housing development was completed Larchwood entered into a contract with Robbins under which Robbins, for a fee of 3 percent of gross rental, undertook to manage the rental property. In 1963, with this arrangement in effect, the mortgage became seriously in default. At that time, Larchwood also owed Robbins a large sum for advances made by Robbins from time to time to cover taxes, operating costs and mortgage payments for which rental income had been insufficient.

In these circumstances the United States instituted the present action in the District Court for the Eastern District of Pennsylvania to foreclose the mortgage. The indenture gave the mortgagee the right to have a receiver appointed in connection with such a foreclosure. Accordingly, on the motion of the United States, the court appointed two receivers, N. L. Wymard and David M. Walker, "to take charge and possession of the mortgaged premises and to manage and operate the same, and to collect the rent and income therefrom * * * during the pendency of this action." Thereafter, on motion of the receivers, the court appointed James McHale, Esquire, to be attorney for the receivers. The court also authorized the receivers to employ a firm for accounting services.

The receivership was instituted in September 1963 and, almost exactly a year later, in September 1964 FHA took possession of the property pursuant to the foreclosure sale thus ending the interim stewardship for which the receivers had been appointed and leaving them with no substantial responsibility under the terms of their appointment other than accounting for income and generally winding up the affairs of the receivership.

In the spring of 1964, pursuant to the receivers' petition, the court awarded an interim allowance of $1,250 to each of them and a fee of $500 to their attorney. In October 1965, a year after the receivers had surrendered possession of the housing project and over the objections of Larchwood and Robbins, the court made additional awards of $4,000 to each receiver, $3,000 to their attorney and a $3,515.25 fee to their accountant. Thus, for managerial and custodial service over a period of one year and work incidental thereto the receivers were awarded $10,500; their attorney was awarded $3,500, and their accountant $3,515.25.

■ The court below correctly stated the guiding principles which this court has applied to determine the reasonableness of fees in such situations as this. Generally, the applicable considerations are the time and labor required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained. United States v. Code Products Corp., 3d Cir. 1966, 362 F.2d 669, 673. And in this process vicarious generosity should receive no countenance. In re Gilbert, 1928, 276 U.S. 294, 296, 72 L.Ed. 580; United States v. Code Products Corp., supra.

The district court did not indicate what circumstances or analysis led it to conclude that the fees requested here were reasonable. Consequently we must consider each aspect of the case without the guidance of the district court as to the considerations it viewed as compelling or decisive.

When the receivers took possession of the apartment project only 68 of the 178

apartments were rented. They have stated that they requested authority from the FHA to operate the apartment complex in an effort "to increase the number of tenants and, if possible, to have it fully rented. It was the thought of the receivers that if the Apartment House was fully rented, a sale would produce an increase in the value of the property."

Their efforts toward this end were notably unsuccessful. They make no claim of increasing rental income. The appellants contend, and it is not disputed, that in fact rental income decreased during the receivership while expenses, other than the fees of the receivers, remained about the same. No purchaser was found for the property and it was bid in by FHA at the foreclosure sale.

■ The receivers did not inform the district court how much time they devoted to their duties,[1] a practice which cannot be approved. Court appointed officers should keep contemporary time records of their work and report such information in any petitions for fees. Moreover, in this case most of the services were not performed in the presence of the court. Consequently it could not take judicial notice of the effort expended. See Coskery v. Roberts & Mander Corp., 3d Cir. 1952, 200 F.2d 150, 153. In these circumstances the only fair determinant of allowable fees for management of the project seems to be a reasonable percentage of the income produced, determined in the light of the petitions and the evidence introduced in the court below.

Gross receipts for the 12 month period during which the receivers managed the apartments were reported as $87,-202.32. However, not even all of this was rental income actually collected by the receivers. About $5,000 was the balance in the Larchwood bank account when the receivers took possession, and about $4,000 consisted of payroll taxes withheld and uncollected rents, subsequently assigned to FHA. In these circumstances we think it fair and indeed favorable to the receivers to base their fee upon collected rental income of about $80,000.

■ The parties agree that a normal commercial real estate management fee would approximate 5 percent of the rental income. However, it is also to be considered here that the services performed by the resident manager[2] of the apartments were separately compensated ($3,290 plus free apartment), as were major accounting services ($3,515.25). Nor did the requested receivers' fees include the separately billed "expenses of Receivership" (including bookkeeping $1,425, secretarial $625, travel $46.75). It seems unlikely that many of these items would have been billed separately by a commercial real estate manager who was compensated on a percentage basis. Consequently something less than a normal real estate management fee of 5 percent would be fair for ordinary management services in this case. We shall approve 4 percent of $80,000, or $3,200, a rate in excess of what Robbins received for its management of the project.

■ We also consider that in this case it was necessary for the receivers to appear in the district court at hearings on seven different days, and that on other occasions they were required to spend time in dealings with the court and with FHA representatives relating to

---

1. The attorney for the receivers estimated that he devoted 202 hours to matters relating to management of the apartments. It seems likely that the receivers devoted no more than that amount of time since it would appear that, in addition to handling minor legal matters, the attorney participated in nearly everything that the receivers did.

2. The resident manager, appointed before the receivership and retained by the receivers, collected rents, paid some bills, dealt with prospective new tenants and rendered other services as the resident representative of the landlord.

the receivership. We allot $150 for each day of the court appearances thus adding $1,050 to the fee.

■■ In addition, we recognize that management in receivership differs from commercial management in that it requires adherence to judicially ordered or sanctioned procedures and some preparation and filing of reports and petitions. However, much of this is the work of the receiver's attorney and his accountant. In all of the circumstances, we shall allow an additional $1,750 for work peculiar to a receivership and not covered by an ordinary management fee or an additional allowance for specified days in court.

Thus, we arrive at a total fee of $6,000 for the receivers for services from September 1963 until they surrendered possession of the property in September 1964.

■ We have not overlooked the fact that two receivers were appointed and served. However, the record and the nature and course of the receivership show no justification whatever for more than one receiver. Unnecessary appointments of two persons to do work that obviously requires only one should not be made. Where they occur this court will not authorize double compensation, but will require that the two appointees share an amount found to be fair compensation for one person performing the necessary or appropriate duties of the office. Here there is no claim and nothing to indicate that either receiver should receive more than the other. Accordingly, $3,000 of the $6,000 receivership fee for the period ending in September 1964 shall be allocated and paid to each receiver.

By October 1965, the attorney for the receivers had received interim allowances of $3,500, supported by a statement of services rendered. This portion of the attorney's fee is not challenged on

this appeal and our examination satisfies us that it is a reasonable award for his services during the period ending September 1964.

The receivers and their attorney also claimed and were awarded small fees for services rendered in connection with a claim they asserted unsuccessfully against Robbins, the parent corporation of Larchwood. Early during the receivership, their examination of Larchwood's books indicated that Larchwood had paid Robbins $31,000, presumably derived from rents, at a time when Larchwood was insolvent and the mortgage on the rental property was in default. Without requesting the court's approval, the receivers sued Robbins to recover this $31,000. Some seven months later the court issued an order approving the receivers' action *nunc pro tunc.*

The suit proceeded to the stage of discovery and then was abandoned, either because the receivers were persuaded that the payment to Robbins had been lawful and proper [3] or because at that time sufficient funds had been obtained from another source, discussed later in this opinion, to pay all of Larchwood's obligations other than amounts claimed by Robbins.

On this appeal it is vigorously urged that proper investigation before filing suit would have made it apparent that Larchwood's payment to Robbins was lawful and proper. And certainly court approval should have been obtained before filing suit. However, the suit did receive the *ex post facto* approval of the district court and we are unable to say on the present record that the claim was frivolous or that the suit was filed in bad faith.

■ In its final order awarding fees the court included items of $500 to the receivers and $500 to counsel "pending the outcome of the suit now pending against John A. Robbins Co., Inc." As we have pointed out, that suit has been

---

3. A report by the receivers' accountants after suit was filed indicated that the payments were for bona fide maintenance expenditures made while Robbins was managing the property.

abandoned. In our judgment these small awards are no more than fair compensation for necessary and proper investigation of the matter once it appeared that Larchwood, while insolvent, had paid $31,000 to Robbins, its parent and sole stockholder. Therefore, we approve a fee of $250 to each receiver and $500 to their attorney for services in the Robbins matter.

■ We come now to the major matter in dispute—fees awarded to the receivers and their attorney for a highly productive undertaking not heretofore mentioned.

We have stated that the land owned by Larchwood included some 20 acres adjacent to but not part of the parcel upon which the housing project was constructed. The FHA insured mortgage did not cover this land.

In December, 1958, the Philadelphia Redevelopment Authority condemned this unimproved tract, which was valued on the books of Larchwood at $121,000. However, in 1963 when the present receivers were appointed Larchwood had not brought the condemnation proceeding to hearing on the matter of damages.

The receivers were appointed in a mortgage foreclosure proceeding solely to take possession of and manage the mortgaged property in the interest of the secured creditor, the United States, pending a foreclosure sale of that property. There was no petition for a general receivership of Larchwood's property and the order appointing the receivers did not purport to give them possession of or authority with reference to anything but the mortgaged property. Nevertheless, the receivers assumed that they had standing to act as general equity receivers of Larchwood's assets in the interest of Larchwood's creditors. Accordingly, in September, 1964, without the consent of the district court or of Larchwood, the attorney for the receivers entered his appearance in the condemnation proceeding. Soon thereafter, the condemnor, Redevelopment Authority, offered to settle the matter for $50,405. This offer was rejected by the receivers, since the property was valued on the books of Larchwood at $121,000. The receivers' attorney then proceeded to press and present the matter skillfully before the Board of View where he obtained an award of $213,000. The Redevelopment Authority appealed and the receivers cross appealed. A jury trial in the Court of Common Pleas followed and resulted in a verdict of $213,000 plus interest. Of this sum, $76,100 was awarded as detention damages. Settlement was delayed because of the proper refusal of the title insurance company to proceed until the representative status of the receivers should be established. Accordingly, the receivers sought and obtained from the district court an order granting them requisite authority *nunc pro tunc*. The final settlement, including interest, was $266,735.75.

The record establishes that much of the general practice of the attorney for the receivers had been related to real estate problems. He also was experienced in the valuation of real estate in connection with his service as president of a savings and loan association. Moreover, the dispatch and diligence with which the case was conducted and the excellent results obtained attest to the skill of counsel. In greater detail, in the course of the litigation he discovered that a portion of the land had been omitted from the records of the condemnation and succeeded in having it included. He also obtained a ruling that compensation for land which was designated as unopened city streets should be granted. He secured a special listing for the case, thus avoiding a delay of several years in bringing it to trial. His prompt handling of the case may have saved the detention damages which may be lost through undue delay. In re Appropriation & Taking of Lands of Moffat, 1960, 400 Pa. 123, 161 A.2d 352. He established, contrary to the contention of the Redevelopment Authority, that interest on the judgment should run

from the date of judgment, rather than from the date of the denial of the Authority's motion for a new trial.

In his petition to the court, the attorney requested a total fee of $50,000, including the $3,500 already paid for other legal work. At oral argument he increased his request for fees relating to the condemnation case to $66,300. However, this request seems to have been abandoned, since the final account requests a fee of $50,000. The appellants contended that about $20,000 would be fair and proper. The court awarded $50,000.

The attorney kept no contemporary record of the time he devoted to the condemnation case. However, after Larchwood challenged his application for a $50,000 fee he prepared a detailed schedule of 768 hours spent in work upon this case. This estimate shows 340 hours devoted principally to research, briefing, courthouse visits and conferences, preparation of legal documents, trials and other hearings. Of these 340 hours, 48 were allocated to work in connection with the settlement and transfer of title after the final award in condemnation. However, the settlement and procedures in connection with it were abnormally controversial and protracted because counsel had appeared in the condemnation proceeding and carried it through to judgment without authority. His principals were not general equity receivers of Larchwood's assets and Larchwood as the owner of the condemned property had never authorized counsel to represent it. Thus, they had no standing in the litigation. In our judgment at least half of the 48 hours claimed in connection with the settlement had to be spent in correcting this situation which counsel should have anticipated and avoided. For this reason, we think it fair to compensate counsel for 24 rather than 48 hours of work in connection with the settlement and attendant difficulties. This reduces the compensable hours of professional service specified in detail to 316.

There was testimony that $50 per hour is a normal and reasonable rate of compensation for such professional work in a condemnation case. Accordingly, we shall allow $15,800 for the detailed legal work set out by the attorney in support of his claim.

In addition, the attorney claims that he devoted 285 hours to "telephone calls," 91 hours to "letters" and 52 hours to unspecified "miscellaneous items," a total of 428 hours. It should be pointed out that this was at best a rough retrospective estimate covering many small items not listed at the time of their occurrence. However, the district court accepted this estimate as reasonable and substantially correct. We cannot find that it is grossly incorrect. We shall allow compensation for 400 hours as a fair aggregation of time consumed by a great number of small office tasks and services. At the same time, we think it would be unfair to allow compensation at a professional rate of $50 per hour for service, most of which appears to have been routine and none of which is shown to have required any considerable professional skill or knowledge. Accordingly, we shall allow compensation at the rate of $25 per hour for this additional 400 hours, thus adding $10,000 to the award to the attorney and making his total fee for the condemnation case $25,800.

■ The receivers also requested and the court approved compensation for services in the condemnation case in the amount of $25,500. But it appears on the face of the receivers' petition for final allowances that their services in this regard were not extensive. They conferred with their attorney from time to time before and after he entered an appearance in their behalf. They appeared twice before the Board of View and attended the trial in the Court of Common Pleas after the condemnation award. They met several times with their attorney and with the district judge in an effort to validate their unauthorized participation in the condemnation proceeding. However, in our

view neither the receivers nor their attorney are entitled to compensation for time spent in surmounting difficulties caused by their own improper, though well intended, course of conduct. Moreover, had the receivers not made their unauthorized intervention in the condemnation case, the role of consulting with counsel and participating in condemnation hearings would have been performed by Larchwood officers. Yet, the initiative and participation of the receivers in the condemnation matter did benefit Larchwood and its principal creditor, the United States, since neither of these parties appears to have interested itself in litigating the matter in an effort to obtain as large an award as possible.

In sum, the receivers themselves did very little in the condemnation case, and that as unauthorized volunteers. Yet their initiative, authorized after the event by the court, did result in substantial benefit to Larchwood and the United States. It will be remembered that until the claim was pressed and litigated before the Board of View, the Redevelopment Authority was willing to pay only $50,000 for the land. This contrasts with an ultimate recovery of $266,000, a gain of $216,000 through vigorous and skillful litigation. True,

the principal compensation for this service should go to the attorney, yet the receivers did authorize, and in legal contemplation were responsible for, the profitable litigation and we have no way of estimating the amount that Larchwood, with its apparent indifference to the course taken by the condemnation proceedings, would have recovered otherwise.

All of these factors considered, we have concluded that approximately 3 percent of $216,000 or a sum of $6,500 will be fair and reasonable compensation to the receivers for their important initiative and their small expenditure of time and effort in the condemnation matter. Accordingly, each of them is awarded $3,250. This added to the sums of $3,000 and $250, approved for each receiver earlier in this opinion, provides total approved compensation of $6,500 for each of them. Of course, the $10,500 in interim allowances already received and divided by the receivers must be deducted to determine the amounts now payable.

It remains to consider a final allowance of $2,650 to the receivers' accountant in addition to $3,515.25 allowed soon after the termination of the receivers' administration of the rental property. The earlier claim showed the following detail:

| 37 hours | at | $20.00 per hour | $ 740.00 |
|---|---|---|---|
| 217½ hours | at | 10.00 per hour | 2,175.00 |
| 49¼ hours | at | 9.00 per hour | 443.25 |
| 39¼ hours stenographic and typing | at | 4.00 per hour | 157.00 |
| | | | $3,515.25 |

However, the final petition stated merely that 25 hours of additional service had been rendered and an estimated forty or fifty hours of work remained to be accomplished. On this showing the court awarded $2,500. If we should assume that the highest rate of pay claimed in the earlier account is applicable to the present claim and that the estimated maximum of 75 hours of work was accurate, the charge for these additional services should not exceed $1,500. But there is no statement that all of this work, different from that covered by the

earlier accounting, was such as to command the highest rate of pay, $20 per hour. In these circumstances, the appellant urges that additional compensation to the accountant should not exceed $1,000. Certainly, there is no proof of the extent or value of services to justify more than that. Accordingly, we will award the accountant the sum of $1,000, which the appellant does not contest, but no more. This, of course, is in addition to the $3,515.25 already awarded and paid.

The orders of July 25, 1967 and August 15, 1967 will be vacated and the cause remanded for the entry of orders incorporating the fees and allowances approved in this opinion.