798 F.2d 1417
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
The OAKS, LTD., a Limited Partnership,
James F. Graham; Graham, McClelland, McCann & Ransbottom,
Counsel for Receiver-Appellee,
Victor D. Merullo, Receiver-Appellee.
 No. 85-3618.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1986.
 
 Before WELLFORD and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On June 28, 1979, the United States filed a complaint in the district court seeking to foreclose of a mortgage secured by an apartment complex located in Columbus, Ohio, and known as "The Oaks." The Department of Housing and Urban Development ("HUD") had become the holder of the mortgage note by virtue of its position as insurer of that mortgage note. Initially, defendant The Oaks, Ltd., an Ohio limited partnership, had executed the mortgage to CFC Capital Corporation. When the defendant defaulted, it was assigned to HUD, which paid off the mortgage, assuming the financial risks of the project.
 
 
 2
 The district court entered a judgment and decree in foreclosure, following the confession of judgment by defendant. Under the provisions of the foreclosed mortgage deed, HUD was entitled to have a receiver appointed, and on January 11, 1980, the district court granted HUD's request for the appointment of a receiver to take possession of the mortgaged property and to manage, operate, and rehabilitate that property pending sale of the property and disbursement of the proceeds. The district court appointed attorney Victor D. Merullo[1] as receiver. James F. Graham and the law firm of Graham & McClelland (now Graham, McClelland, McCann & Ransbottom) were later appointed by the district court as counsel for the receiver.
 
 
 3
 The Oaks is a 196-unit apartment complex constructed in 1972 by the defendant. The defendant failed to make any payments on the $3,168,000 original mortgage note before assignment of the mortgage to HUD and made no payment after the assignment. HUD permitted the existing management company to operate the project until the receivership in 1980.
 
 
 4
 Following a five-year receivership, the complex was sold in January 1985 for $3.4 million, leaving a deficiency on the mortgage held by HUD of more than $1.1 million. The estate, however, generated a total of $4.4 million, $3.4 million from the sale of the property and $1 million accrued by the receivership during its course. At the outset, the receivership estate had an appraised value of only $1.75 million.
 
 
 5
 In March 1984, Merullo as receiver sought and was awarded interim fees in the amount of $129,000. After the sale of the property, he requested and was awarded an additional $60,000 in fees, a total compensation of $189,000. The appropriateness of these fee awards to the receiver has not been challenged.
 
 
 6
 On February 19, 1985, the receiver's final report was filed with the district court, which included an application for $350,000 in attorney's fees and $13,049.67 in expenses for counsel. The government objected to this fee request and evidentiary hearings were held by the district court. After reviewing the evidence presented the district court awarded counsel $325,000 in fees and $4,596.18 in expenses for its work, and the United States now appeals this award as excessive.
 
 
 7
 As the district court correctly noted, an award of attorney's fees lies within the sound discretion of the district court and the district court's decision will not be disturbed absent a clear abuse of discretion. See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973), vacated in part, 540 F.2d 102 (3d Cir.1976); United States v. Larchwood Gardens, Inc., 404 F.2d 1108 (3d Cir.1968), appeal after remand, 420 F.2d 531 (3d Cir.1970). The district judge noted also that his discretion is "certainly not-unbridled." This standard thus governs our review of this appeal.
 
 
 8
 The district court based its award of $325,000 principally on the success of the receivership in rehabilitating the property and in bringing about what it considered to be a successful sale. He justifiably criticized HUD for allowing the property to deteriorate over a number of years without more immediate action in view of the original operator's default. The court was impressed with counsel's original and periodically required reports setting out problems, conditions of operation, and ongoing operations. In light of the original report, the district judge noted he had "instructed the receiver and his counsel to rehabilitate the property in order to eventually sell it for the highest and best price." The court found that the receiver and the attorney performed this "formidable task" very satisfactorily for the ultimate benefit of the United States, pointing out the extensive repairs that were required and the necessary correction of numerous building code violations.
 
 
 9
 In emphasizing the successful conversion of The Oaks into a viable operation, the district court also noted an increased occupancy ratio and over $400,000 worth of "major and cosmetic renovations and improvements." The judge emphasized that the final net sale price exceeded the then "appraised value" by more than $850,000, pointing also to an elaborate bidding procedure involving the obtaining of HUD approval for a bidder to assume the existing low interest loan. (With respect to the latter, however, it is clear that the ultimate buyer paid cash for the project; there was no assumption of the existing loan).
 
 
 10
 The principal attorney in the firm serving as counsel, James F. Graham, kept no record of his time, but estimated that he spent 250 hours over the entire receivership period.[2] His associates, however, claimed attorney's fees based upon a total of 1279 documented hours expended over the five-year course of the receivership. One of these attorneys, Stephen R. McCann, testified that he had spent 718 hours and that some of his duties "crossed over" into those of the receiver, who was paid an average of $35 an hour for somewhat similar responsibilities. McCann suggested that $50 an hour thus might be an appropriate rate per hour for this time.[3] At the time the receivership was established, McCann had been admitted to practice law for less than four years, considerably fewer years than Merullo. The balance of approximately 561 hours were logged by James W. Ransbottom and Clay P. Graham. Ransbottom had less legal experience than did McCann, and the latter is former law clerk of the district judge in this case who had not been admitted into law practice until after the receivership had been established. The charge per hour requested for the latter two, with combined law practice experience of less than three years in 1980 when counsel was first appointed, was $125 an hour, McCann testified, because "their work involved preparation of documents for the Court, preparation of [rent] applications, preparation for hearings, preparation of bid package and negotiations with the bidders, which are all legal functions."[4] McCann, however, conceded that there was no set standard fee that the firm charged for their time.
 
 
 11
 The principal expert witness presented by the receiver's counsel in support of their request for a $350,000 fee was attorney John C. Elam, an admitted friend of James F. Graham who had served as personal legal counsel in Graham's business dealings.[5] This attorney expert witness testified that a total average fee of between $220 to $270 an hour for the time involved was appropriate although it represented a "premium" and although there may be "different hourly charges depending on the individual and their skills."[6] The attorney expert witness stated that he had no problem with the practice of each of two or more attorneys in the firm involved in the same work at the same time billing for his own work separately. This, of course, represents some duplication of effort.
 
 
 12
 Merullo, the receiver, testified that his law firm's standard "basic" legal fee was $75 an hour. A 1982 Columbus, Ohio, study of lawyers' fees, in which 1327 surveys were returned, indicated that 85 percent of these attorneys charged, as an "average hourly rate", less than $99 an hour, and only 6 percent charged over $120 an hour.
 
 
 13
 The district court summarized the basis for its fee award of $325,000 for, at most, 1529 estimated hours of time:
 
 
 14
 The factors which this Court believes to be most germane, in order of their importance, are: 1) the results achieved by the Receiver and his counsel; 2) the ability, reputation and other professional qualities of the Receiver's counsel in light of the complexity and diversity of the legal and other problems encountered; 3) the size of the estate and its ability to afford the expenses and fees requested; and 4) the time required and the time expended to conclude the receivership.
 
 
 15
 The court, at the same time, discounted the government's contention that much of the time claimed by the attorneys was for the performance of nonlegal work ordinarily performed by a receiver, for which the receiver in this case, a well-qualified attorney, was paid an average of $35 an hour. The district court conceded, moreover, that "the duties of the Receiver and his counsel necessarily overlapped."
 
 
 16
 Although there was a successful sale, and the district court is not to be faulted for considering this important, it is well to remember, in context, that HUD was not paid its interest arrearages. It came out of the sale a net loser of about one-third of its original investment, and HUD received no payments at all during the five years of receivership. Assuming also that the district court properly considered James Graham to be a highly skilled professional, the uncontradicted evidence in this case shows that Mr. Graham kept time records and, at best, devoted only 16 percent of the total time claimed as a basis for the fee award in this case. The other younger and relatively inexperienced attorneys in his firm, while of "fine reputation" as found by the trial judge, would surely be entitled, from the objective evidence introduced, to no more than $75 an hour for their time on the average.[7] (Mr. McCann, who spent at least twice the hours of any other attorney in the case, was billing his time at $50 an hour, and another more experienced attorney, the receiver, was being paid $35 an hour for largely comparable work). The legal work done, for the most part, was neither complex nor difficult, including as it did, according to the district court: (1) handling, resolving and settling tenant, personal injury, and insurance claims, (2) handling evictions, (3) handling apartment leases, (4) settling creditor claims, (5) "ironing out difficulties" during the "transition of possession to the Receiver", (6) determining financial strategies, (7) advising the receiver about reported drug investigations, (8) "assessing" alleged building code violations, and (9) advising the receiver of expenditures for repairs and maintenance.
 
 
 17
 The district court then took into account the size of the receivership estate in deciding to award to the attorneys approximately 10 percent of the successful bid amount. Last and least, the court considered the time involved. It should be noted that the district court unfortunately took government counsel's opposition to the fee award at the hearing in a personal vein, almost as an affront to the court, apparently because the court had appointed the receiver and his counsel and obviously had a high regard for their ability and reputation. This was unfortunate because it was the duty of government counsel to make the government's opposition known. The court disregarded duplication of services entirely and accepted without question Mr. James Graham's estimation of time involved without records to support the claim. The court also accepted, apparently without question, the opinion of the attorney expert witness, who was personally involved in representation of Mr. Graham, and who also later undertook to represent the Graham firm's interests on this appeal.[8]
 
 
 18
 In viewing this record very carefully, as we have felt called upon to do, we are left with the firm impression that the fee award in this case was unreasonable and excessive, even giving to able counsel the benefit of a substantial bonus award over and above what would otherwise have been a reasonable fee based on the time and legal responsibility involved. We must therefore set aside the attorney fee award of $325,000 and find it to be an abuse of discretion under all the circumstances. Attorneys should not have fees established primarily based upon some proportion of the net amount realized from a sealed bid sale of receivership assets. Rather, the lodestar fee approach generally utilized by the courts is appropriate also in receivership cases. See United States v. Larchwood Gardens, Inc., 404 F.2d 1108 (3d Cir.1968), appeal after remand, 420 F.2d 531 (3d Cir.1970). While the lodestar approach is not necessarily mandatory, since factors such as success of operation and outcome and special and complex legal difficulties involved may be taken into account, the primary considerations should be time expended and a reasonable rate per hour with application of a reasonable bonus award where clearly indicated. The Supreme Court has only recently reiterated that, although " '[t]here is no precise rule or formula' " for determining what is a reasonable attorney's fee, the "hours ... reasonably expended" and "an appropriate hourly rate for the services rendered" remain the capstones for such a determination. Evans v. Jeff D., --- U.S. ----, 54 U.S.L.W. 4359, 4364 (U.S. April 21, 1986) (quoting Hensley v. Eckerhart, 461 U.S. 424 436 (1983) ). We have attempted to give the attorneys for the receiver in this case an appropriate hourly rate plus a "premium" for hours reasonably expended, taking into account the attorneys' skill and experience, as well as the complexity of the work involved.
 
 
 19
 We find that an appropriate and reasonable fee under all the circumstances in this case is $225,000 for the counsel for the receiver. The district court award of $325,000 is set aside and an attorney's fee of $225,000 is awarded to the attorneys involved.
 
 
 
 [1]
 Merullo, a Columbus, Ohio, attorney, was born in 1942 and admitted to practice in 1973. He received a B.S. from Ohio State University (Columbus, Ohio) and a J.D. from Capital University (Columbus, Ohio). Martindale-Hubbell Law Directory (1985) rates his "legal ability" as "high to very high" and gives him a "very high" "general recommendation" rating, the same ratings given his law firm
 
 
 [2]
 Although we do consider as a factor in our review of the district court's decision the undocumented hours claimed by James Graham, we note that the case law strongly disfavors any award of attorney's fees based on undocumented hours. See United States v. Larchwood Gardens, Inc., 404 F.2d at 1111; King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir.1977)
 
 
 [3]
 McCann testified that "[w]e charged my time at $50 per hour, and that's based upon the receivership duties that I performed ... and because of my additional duties with advising, counseling on legal matters, we set the rate of $50 for myself...."
 
 
 [4]
 McMann also testified that the total fee requested was also equivalent to a reasonable real estate commission for the sale of the property
 
 
 [5]
 Counsel to the receiver also presented as an expert witness on the reasonableness of attorney's fees James Petropoulos, Jr., founder and owner of James Petropoulos & Company, a real estate management and appraisal firm specializing in industrial property. Because Petropolous, who had previously served as court-appointed appraiser in this case, was not shown to possess any particular knowledge, skill, experience, or training in the calculation of reasonable attorney's fees, we see little relevance to his testimony in this regard
 
 
 [6]
 Mr. Elam testified that the hourly rate charged in 1985 by attorneys other than himself in his firm, the largest in Columbus, varied from $85 an hour to $150 an hour
 
 
 [7]
 The district court indicated that had he followed the "lodestar approach" he would have awarded $125 an hour for the 1280 hours of work by Mr. Graham's associates. This would have constituted, in our view, a premium award of at least 66 percent based on the evidence in the record. Such an award would have left us with a firm conviction that the fee award was in excess of a reasonable fee
 
 
 [8]
 In this respect, we have concern with the implications of Disciplinary Rule 5-101(B) of the Ohio Code of Professional Responsibility and Ethical Considerations 5-9 and 5-10 adopted in conjunction with the Code. See also ABA/BNA Lawyer's Manual on Professional Conduct 61:503-506 (1985)