### In re IMPERIAL "400" NATIONAL, INC., a Delaware corporation, et al.

Chemical Bank of New York Trust Company, as Trustee under Bank Agreement, dated August 11, 1950, as amended, with the General Tire & Rubber Company, relating to the General Tire & Rubber Company Non-contributory Pension Plan; First National Bank of Akron, Trustee of the Pension Plan for Salaried Employees of the General Tire & Rubber Company; Bank of America, National Trust and Savings Association, as Trustee for Aerojet-General Corporation Noncontributory Pension Plan Trust PWP–12829; Bank of America, National Trust and Savings Association, as Trustee for Aerojet-General Corporation Salaried Employees Retirement Plan Trust PNP–13840; Union Bank and Unsecured Creditors' Committee; Thomas J. O'Neill and Joseph M. Nolan, Respondents.

Appeal of CHEMICAL BANK OF NEW YORK TRUST COMPANY, as Trustee under Bank Agreement, dated August 11, 1950, as amended, with the General Tire & Rubber Company, relating to the General Tire & Rubber Company Noncontributory Pension Plan, in 18,-804.

Appeal of FIRST NATIONAL BANK OF AKRON, Trustee of the Pension Plan for Salaried Employees of the General Tire & Rubber Company, in 18,805.

Appeal of BANK OF AMERICA, National Trust and Savings Association, as Trustee for Aerojet-General Corporation Noncontributory Pension Plan Trust PWP–12829, in 18,806.

Appeal of BANK OF AMERICA, National Trust and Savings Association, as Trustee for Aerojet-General Corporation Salaried Employees Retirement Plan Trust PNP–13840, in 18,807.

Appeal of UNION BANK, in 18,808.

Appeal of UNSECURED CREDITORS' COMMITTEE, in 18,809.

Nos. 18804–18809.

United States Court of Appeals, Third Circuit.

Argued June 5, 1970.

Decided Aug. 18, 1970.

As Amended Sept. 4, 1970.

Second Amendment Sept. 29, 1970. Supplemental Opinion and Rehearing En Banc Denied Sept. 29, 1970.

234

Alvin Weiss, Riker, Danzig, Scherer & Brown, Newark, N. J., for appellants in Nos. 18804–18807.

Laurence W. Levine, Walsh & Levine, New York City, for appellant in No. 18808.

Sheldon Schachter, Newark, N. J., for appellant in No. 18809.

David Ferber, S.E.C., Washington, D. C., on the side of appellants.

Joseph M. Nolan, Nolan & Lynes, Newark, N. J., for appellee trustee.

Before FREEDMAN,[*] VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from the December 22, 1969, District Court order granting ad interim allowances of $90,000. to the trustee in reorganization and of $125,000. to his attorney. Appellants Union Bank, a creditor, and the Unsecured Creditors' Committee contend that the order should be reversed; the Securities and Exchange Commission, nominally an appellee because of its designation as a party to the reorganization under 11 U.S.C. § 608, also urges reversal.

The challenged awards are the third interim allowances applied for and granted to the trustee and his counsel. Previously, at the conclusion of each 14-month period of service, the trustee had requested $30,000. His attorney has asked for $45,000. at the close of the first 14-month period and $60,000. at the close of the second period.[1] Although the creditors objected to neither request, the SEC recommended awards approximately 25% lower than those requested[2] on the basis of its study of the relevant time records and on the theory that interim allowances should only be awarded "to meet severe economic hardship of Trustees and their attorneys." The court noted that the SEC recommendations only "trimmed a fraction" off the requested allowances, commented on the diligence and success with which the trustee and his attorney had pursued their difficult task, and in each case awarded the requested amounts in full as "reasonably" related to the value of the services rendered. No appeal was taken from either award.

In their petitions for third interim allowances, filed to cover the 14-month period from July 1, 1968, to September 1, 1969, the trustee requested $90,000. and his attorney $125,000. The trustee later amended his petition to cover the entire 42-month period of his trusteeship, and

---

[*] Judge Freedman did not participate in the decision of these appeals.

1. See In re Imperial "400" National, Inc., 429 F.2d 671 (3rd Cir., 1970), for the background of the debtor and the history of this reorganization proceeding. The trustee, Thomas J. O'Neill, Esq., was appointed on February 21, 1966, the date that court approval was given to the petition for reorganization. Joseph M. Nolan, Esq., was appointed on February 24, 1966, as attorney for the trustee. The first allowance period ran from the date of appointment to April 15, 1967. The second period ran from April 15, 1967, to July 1, 1968.

2. The SEC recommended $22,500. as an interim allowance to the trustee for each period, and $37,500. for the first period and $45,000. for the second period as an allowance to the trustee's attorney.

his attorney filed a supplemental petition to make clear that his original petition was also intended to cover his entire period of service. The various creditors of the debtor and the SEC originally opposed any further allowance of interim fees whatsoever. However, after the court stated that it had "no intention of asking the Trustee and his counsel to work for a couple of years without any interim compensation," the SEC recommended allowances of $27,500. to the trustee and $45,000. to his attorney, calculated solely on the basis of work performed during the third 14-month period. The creditors also changed their position to ask the court to consider only the third period, and to employ the same criteria it had applied in arriving at its first two awards. The court, considering all three periods, awarded the requested allowances in full.

Thus, the total interim allowances for the 42-month period of service have been $150,000. to the trustee and $230,000. to his counsel.[3]

 Although neither the trustee nor his attorney devoted all his working time to the affairs of the reorganization debtor, it is clear that their services were rendered on an almost daily basis. In such circumstances, this court has held that interim allowances may be appropriate. In re Solar Mfg. Corp., 190 F.2d 273 (3rd Cir. 1951); see In re McGann Co., 188 F.2d 110, 112 (3rd Cir. 1951); In re Keystone Realty Holding Co., 117 F.2d 1003, 1006 (3rd Cir. 1941). Nevertheless, it is not every case where such awards are proper, In re McGann Co., *supra*, 188 F.2d at 112;[4] allowances should only be granted where they are necessary "in order that the administration of the debtor's estate may be carried on." In re Keystone Realty Holding Co. *supra* at 1006. In addition, even where hardship to the trustee or his attorney requires the award of interim fees, the allowances granted should be "well below any possible final allowances," both because "overly generous" awards might encourage procrastination and because it is only at the conclusion of a reorganization that the value of the services can be appropriately measured. In re McGann Co., *supra* 188 F.2d at 112.

Initially, then, we must examine the trial court's "presumption" that "considerable hardship" would exist absent the third award of interim fees.[5]

3. For comparison, the relevant facts of the three 14-month periods of interim compensation are set out in the following table:

| Trustee Period | Total Hours | Amount Requested | SEC Recommendation | Amount Awarded |
|---|---|---|---|---|
| 1st | 1170 | $ 30,000. | $22,500. | $ 30,000. |
| 2nd | 1168 | 30,000. | 22,500. | 30,000. |
| 3rd | 1318 | 90,000. | 27,500. | 90,000. |
| Counsel | | | | |
| 1st | 2277 | 45,000. | 37,500. | 45,000. |
| 2nd | 2198 | 60,000. | 45,000. | 60,000. |
| 3rd | 2021 | 125,000. | 45,000. | 125,000. |

4. In Finn v. Childs Co., 181 F.2d 431, 435 (2nd Cir. 1950), the court said:

"We take note of the somewhat bitter dispute as to the drain upon the working capital of the newly reorganized company and its present vicissitudes only to suggest that a successful reorganization placed in jeopardy by high fees allowed can point only to a dreary round with the debtor emerging from bankruptcy only to re-enter it after the lawyers are paid."

See, also, Surface Transit, Inc. v. Saxe, Bacon & O'Shea, 266 F.2d 862, 865 (2nd Cir. 1959).

5. The District Court made no findings of fact or conclusions of law, and nowhere in the transcript of hearings held on the petitions for third interim allowances is there a specific finding of economic burden on the trustee or his attorney.

Neither the trustee nor his attorney alleged at any time that such awards were necessary to carry on the administration of the estate. Indeed, at the time of the third applications for interim allowances, the record would indicate that such hardship did not exist. The trustee had already been awarded $60,000. for his services; his attorney had received $105,000. The trustee's overhead was minimal, since most of his work was done at the debtor's offices or on business trips; the majority of his expenses were currently paid from the estate of the debtor,[6] and his out-of-pocket disbursements were returned to him promptly upon application.[7] No offer was made by the trustee concerning the sufficiency of his non-reorganization employment or income. Similarly, the attorney for the trustee did not suggest that his economic hardship had not been adequately alleviated by the previous awards of fees and expenses. While we take notice that the trustee's attorney had overhead in running his five-man law firm, he did not intimate an inability to meet his payroll by other sources of income.[8] In fact, his statements at the hearing held on the

third application for interim allowances suggest the contrary.[9]

█ Specifically, the trustee and his attorney failed to demonstrate that the previous interim awards did not adequately relieve any burden arising out of their service during the first two periods. There is no indication, for example, that their previous requests were purposely understated out of a concern for the debtor's cash position[10] or that the requests were based on the assumption that the reorganization would shortly terminate so that final allowances could be awarded.[11] The court itself stated that its determination of the "reasonableness of previous awards" had been reevaluated only to the extent of services rendered since the effective date of those awards. We therefore hold that the District Court erred in considering the first two interim periods in its decision on the third interim allowances.

█ Viewing the allowances in the light of services performed during the third interim period, it is clear that they are excessive. Neither the trustee nor his attorney offered any evidence that the burden imposed upon them by rendering

6. The monthly trustee reports indicate that between February 23, 1966, and September 1, 1969, approximately $30,737. in "Trustee Expenses" were disbursed without court order. This amount does not include substantial sums listed separately as "Travel Expenses."

7. None of the appellants challenges the award of expenses to the trustee or his counsel for the third interim period.

8. While we can assume that Nolan's claimed 1205 hours spent on the debtor's affairs represented a substantial portion of his billable time during the third 14-month period, his partner spent only two work weeks on the reorganization during this period and the combined total of his three associates amounted to approximately 20 work weeks.

9. The following colloquy appears at 192a:
"THE COURT: I don't know whether you anticipate such a prosperous year next year—
"MR. NOLAN: Well, we all live in hope.
"THE COURT:—that carrying it [the interim compensation] over to 1970

would amount to a penalty [because of increased income tax.].
"MR. NOLAN: I would say to the Court that I have had no problems with this question of money. In a sense, your Honor—
"THE COURT: That is nice to know.
"MR. NOLAN: This is a serious matter, though.
"THE COURT: Yes. There is a lot of money."

10. Each of the first two court orders granting interim allowances provided, as did the third order, that payment would be made "at the discretion of the Trustee, when funds become available." An examination of these orders indicates that the wording was supplied by the attorney for the trustee.

11. In his second petition for interim fees, the attorney for the trustee stated that "[i]t is anticipated that a considerable period of time will elapse before the case is concluded and a plan of reorganization prepared, proposed, and confirmed by the Court."

services during the third period was greater than the burden in previous periods.[12] The record indicates that expenditure of the trustee's time increased only 13 per cent. during the third period, while his interim award tripled. The attorney for the trustee actually spent less time during the third period than in either of the previous periods, but his award more than doubled. See note 3, *supra.* We can find nothing in the record to explain why the $25.00 per hour rate previously requested by and awarded to the trustee, or the average $27.00 per hour rate previously requested by and awarded to his attorney, ceased to be sufficient for the third period. Consequently we hold that the District Court abused its discretion in awarding interim compensation equivalent to $69.00 per hour to the trustee and $62.00 per hour to the trustee's attorney.[13]

■ Because the record does not indicate what "allowances of compensation to [the] trustee and his counsel [are necessary] in order that the administration of the debtor's estate may be carried on" as of the termination of the third period, the trustee and his counsel did not sustain their burden of proof to sup-

port their requests in the District Court and the case will be remanded for definite findings and conclusions unless the creditors agree to the allowances recommended by the SEC for the third period. On remand, the District Court should not only consider what is necessary "in order that the administration of the debtor's estate may be carried on" [13a] (In re Keystone Realty Holding Co., *supra,* 117 F.2d at 1006), but also the other criteria set forth in our cases cited on page 235, supra.

■■ In estimating the final award, the District Court should consider economy of administration, the burden that the estate may safely be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate. E. g., Surface Transit, Inc. v. Saxe, Bacon & O'Shea, 266 F.2d 862, 865 (2nd Cir. 1959); Levin v. Barker, 122 F.2d 969, 972 (8th Cir. 1941); see Meyers, Appellate Review of Attorney Allowances in Chapter X Reorganizations, 53 Colum. L.Rev. 1039, 1068–70 (1953).[14] We are impressed, as was the District Court, with the apparent success of the reorgani-

12. Although the District Court "assumed" that the legal matters in the third ·period required the use of more skillful lawyers, the affidavit submitted by the attorney for the trustee indicated that total "partner" hours, see note 24 *infra,* during the third period were 718 less than those spent in the first period and only 23 more than those spent in the second period.

13. See note 3, *supra* ($90,000./1318 = approximately $69.00 and $125,000./2021 = approximately $62.00). "Full compensation" for the third period to the attorney, accepting his accounting of hours and rates, would have amounted to $99,427.50 (1205 x $60., 83½ x $50. and 731¾ [being 1¾ + 693 + 37] x $30.—see 159a and note 24 *infra),* or an. average rate of approximately $49.00 per hour ($99,-427.50/2021).

13a. We emphasize that the words "hardship" and "burden" have been used above because we do not believe the record justifies the awards even on the basis of these terms used by the District Court. The standards for allowance of interim fees

to trustees and their counsel continue to be those set forth in our three decisions cited above at page 235.

14. Similar tests have been utilized by this court in determining compensation in equity receiverships. United States v. Larchwood Gardens, Inc., 404 F.2d 1108, 1110 (3rd Cir. 1968); United States v. Code Prod. Corp., 362 F.2d 669 (3rd Cir. 1966). In the *Larchwood Gardens case, supra,* the court used this language at 404 F.2d p. 1110:

"Generally, the applicable considerations are the time and labor required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained. * * * And in this process vicarious generosity should receive no countenance."

zation to date.[15] But the cost of administration has been great. In addition to the $380,000. awarded to the trustee and his attorney as interim fees during the first 42 months of administration, $50,376. was incurred as their expenses,[16] over $48,000. has been paid in retainers and interim fees to counsel specially appointed at the request of the trustee,[17] and $95,406. has been paid to accountants. These charges of $573,782., even though only of an interim nature, represent approximately 67 per cent. of the net profit (before deduction of administrative expenses paid) of the debtor during the same 42-month period. This is hardly in keeping with the principle of "strictest economy" contemplated by the Bankruptcy Act. London v. Snyder, 163 F.2d 621, 625 (8th Cir. 1947); see United States v. Larchwood Gardens, Inc., 404 F.2d 1108, 1110 (3rd Cir. 1968); Official Creditors' Committee of Fox Mkts., Inc., 337 F.2d 461, 465 (9th Cir. 1964).

15. In 1965, the debtor had a gross income of $9,642,539. and a net loss of $2,194,539. In 1969, after four years of administration by the trustee, the debtor had an unaudited gross income of $12,669,622. and a net profit (without deduction for the challenged award of $219,166. for services and expenses of the trustee and his counsel) of $671,941 (appellee's brief at 19).

We note, however, that after 4½ years in administration, the approval of a plan of reorganization is not immediately foreseen. Not only has the trustee submitted no plan of his own, but he and his attorney have opposed prompt consideration of plans submitted by various creditors. The trustee's lack of a sense of urgency is demonstrated by the position of his attorney that their fee applications take precedence over the affairs of the debtor:

"MR. NOLAN: * * * [I]f * * * the Third Circuit sends back the fee question [involved in this appeal] for a plenary hearing, that is certainly going to take precedence over everything, because that will go on for two or three weeks, maybe months, to get that record into evidence.

"Now, I have not caused that, but want the Court to be aware of it and I do not intend to concentrate on anything else but that.

"THE REFEREE: Not even the plans, Mr. Nolan?

"MR. NOLAN: Not even the plans. Because unless I find out what the Third Circuit is going to do on compensation for the last four years, then my decision as to what I am going to do is dependent upon their decision.

 * * * * *

"[If a plenary hearing is required on the fee applications,] I intend * * * to concentrate all my activities on that, and I do not intend to worry about Imperial '400', I intend to worry about Mr. Nolan and the Trustee." (Transcript of 5/4/70 hearing before Referee on Plans of Reorganization [Document 785] at 13–15.)

It appears that Judge Staley's prophesy of "procrastination" caused by excessive interim allowances, In re McGann Co., supra at 112, is borne out by the above statements. We cannot condone such a position, especially where expressed by an appointed officer of the court.

16. The District Court noted that these disbursements would be reviewed at the final accounting. Such a review would seem appropriate. The expenses are not always listed in detail (for example, the trustee's attorney lists 52 "Room and Meals" charges in his third petition; 48 of these charges are exactly $25.00), and some appear to be excessive (for example, some plane fares indicate first class passage, and claimed tips do not indicate representation of a bankrupt). The necessity for some charges or their compensability is not clear (for example, transportation expenses to the debtor's offices). See In re Polycast Corp., 289 F.Supp. 712, 720 (D.Conn.1968). In addition, because of the confusion created by the debtor paying directly for expenses without court order and by the trustee and his attorney paying for expenses of each other and of others, it is possible that some expenses have been inadvertently listed twice (for example, the trustee notes payment on 9/8/66 for a round-trip flight to Chicago by his attorney; his attorney notes a 9/5/66 payment for an identical expense).

17. There is no indication that where final awards were made the court discounted the hourly charges of these attorneys, in view of the fact that they were representing a bankrupt corporation rather than a private client. See text accompanying note 24 infra; In re Hudson & M.R.R., 339 F.2d 114 (2nd Cir. 1964).

Special note should also be made of the offered explanation of time spent by the trustee and his attorney. Although the SEC had access to at least the attorney's time sheets, only a total hourly listing was supplied to the court. Neither the District Court, nor this court in reviewing the record on appeal, can be expected to render an appropriate decision in the absence of adequate time records. In re Roustabout Co., 386 F.2d 354 (3rd Cir. 1967) ; In re Wal-Feld Co., 345 F.2d 676 (2nd Cir. 1965). While minute detail should not be required in an interim application, there is nothing in the record from which a court could estimate how much work was productive[18] or necessary,[19] how much work required treatment by experienced attorneys,[20] or to what extent the services rendered were duplicative.[21] It may also be possible that time not legally compensable, such as that spent in applying for or in defending interim fee awards[22] or in travelling to the offices of the debtor,[23] was included in the accounting. Furthermore, the assumption that the trustee or his attorney are entitled to fees normally charged private clients[24] is unwarranted. Surface Transit, Inc. v. Saxe, Bacon & O'Shea, *supra*, 266 F.2d at 865; London v. Snyder, *supra*, 163 F.2d at 625. Compare United States v. Larchwood Gardens, Inc., *supra*, 404 F.2d at 1114 (equity receivership).[25]

18. The SEC noted that 42% of the time spent by Nolan during the first period represented "travel" (transcript of 6/12/67 hearing at 7). We cannot determine whether included in this accounting was time actually spent in transit. Similarly, we are unable to determine how much of the trustee's extensive transit time was "billed."

19. See note 28 *infra*.

20. For example, the record is replete with routine reports and petitions. In re Polycast Corp., *supra* note 16; see United States v. Larchwood Gardens, *supra* 404 F.2d at 1114.

21. E. g., United States v. Code Prod. Corp., *supra* note 14, at 673; Surface Transit, Inc. v. Saxe, Bacon & O'Shea, *supra*. The trustee, who is himself a lawyer, and his attorney made several cross-country trips together, including a six-day trip to a Las Vegas convention.

22. United States v. Larchwood Gardens, Inc., 420 F.2d 531, 534 (3rd Cir. 1970). The court there stated:
 " * * * we conclude that in this situation the general rule requiring each party to pay his own expenses in defense of his personal interest should control. It is our understanding that services necessarily involved in preparing such applications to the district court and defending them there are not compensable. We think the same rule should apply on appeal * * *."

23. In re Polycast Corp., *supra* note 16, 289 F.Supp. at 720.

24. The attorney for the trustee, in response to a request by the SEC, filed an affidavit listing the total hours spent on reorganization since appointment by each lawyer in his firm. The suggested "fair hourly rate" stated to be based on "rates charged by leading law firms" was $60.00 for the trustee's attorney's hours, $50.00 for his partner's hours, and $30.00 for his associates' hours. The total requests for interim fees amounted to 72% of the total charges thus calculated; the remaining 28% was listed as "Total Due on Interim Allowance." In addition to the failure to break this charge down, no evidence other than the allegation in the affidavit was presented that these rates were customary in Newark even for private clients. Compare United States v. Larchwood Gardens, Inc., *supra*, 404 F. 2d at 1114; In re General Economics Corp., 360 F.2d 762 (2nd Cir. 1966). [We note that 80% of the other partner's hours, billed at the $50.00 rate, was spent during the first interim period, at a time when he was an associate rather than a partner. (Transcript of 6/12/67 hearing, at 9).]

25. Affidavits submitted by the Union Bank indicated that comparable motel chains (not in reorganization or receivership) compensated their officers and counsel far less than the amount of suggested compensation to the trustee and his attorney. For example, TraveLodge, with 313 motels operating in a manner similar to Imperial "400"'s approximately 116 motels, and with 122 franchises, paid no director or officer more than $30,000. in 1968; its principal counsel received $55,660., and its total professional fees (presumably including architect and accounting fees) amounted to $93,630.

As noted above, the SEC has taken part in this proceeding since its inception.[26] Only the SEC has examined the time sheets, and it was the only party to appear in opposition to each of the petitions. Because of its experience in such matters, its impartiality, and its sole familiarity with the relevant facts in this case, its recommendations should be given great weight. E. g., In re Solar Mfg. Corp., 215 F.2d 555, 562–563 (3rd Cir. 1954); In re General Economics Corp., 360 F.2d 762, 765 (2nd Cir. 1966); In re Philadelphia & Reading Coal & Iron Co., 61 F.Supp. 120, 124 (E.D.Pa.1945); In re Polycast Corp., *supra* note 16. Although the SEC position on the third interim awards is not clear,[27] it is clear that under no circumstances would it consider further awards in excess of $27,500. to the trustee and of $45,000. to his attorney to be proper.

Also, the record and the argument before us indicate that the trustee and his counsel treat the Creditors' Committee as an adversary, rather than as a partner, in the effort to secure a fair plan of reorganization as promptly as possible. We suggest that the trustee and his counsel make a greater effort to work with the creditors and other interested persons in an effort to terminate this lengthy reorganization proceeding with dispatch.[28]

The District Court order of December 22, 1969, will be reversed and remanded for further proceedings consistent with this opinion.[29] In no event, however, shall awards of interim compensation for the third period exceed $27,500. to the trustee or $45,000. to his attorney. The costs of the Brief for Appellees and the docketing fees in this court shall be paid by the trustee and his attorney individually, without reimbursement from the debtor's estate. See United States v. Larchwood Gardens, Inc., *supra* note 22, 420 F.2d at 535. The charge for printing the appendix shall be borne by the debtor's estate. Other costs, including printing of briefs for all other parties, shall be paid by the parties incurring them.

Before VAN DUSEN and ADAMS, Circuit Judges.

## SUPPLEMENTAL OPINION SUR PETITION OF REHEARING

VAN DUSEN, Circuit Judge.

Appellees have filed a Petition for Rehearing En Banc conceding that several items mentioned in our opinion were not accurately stated in the District

---

26. In fact, it was on motion of the SEC that the original petition under Chapter XI was dismissed and present reorganization under Chapter X begun.

27. At the hearing on third interim allowances, the SEC's initial position was that it would be "inappropriate at this stage of the proceeding to supplement past allowances." When faced with the court's announced intention to award interim fees despite this recommendation, the SEC recommended $27,500. to the trustee and $45,000. to his attorney, without consideration of past awards. In its brief in this court, the SEC points both to the second recommendation (brief at 3) and to its position that no further awards have been justified (brief at 6). The SEC's position may, therefore, be (1) that no further awards should be made, (2) that awards of $27,500. and $45,000. should be made, or (3) that, looking to the total of its recommendations, see note 3 *supra*, the trustee is entitled to $71,500. total interim compensation, or $11,500. additional compensation at this time, and his attorney to a total of $127,500., or $22,500. additional compensation.

28. Documents 480, 484, and 500, to which counsel for the trustee called the court's attention during the argument, indicate the friction which apparently exists. The court questions whether the deposition of 12/12/68 (Document 500) was worth the cost and time of a round-trip flight to the west coast.

29. We do not contemplate that these proceedings will be extensive, and certainly they should not, as the attorney for the trustee has proposed, "take at least a month of hearings if not more" (transcript of 5/4/70 hearing, at 14). The main business of the trustee and his attorney at this point should be to press forward to an acceptable plan of reorganization, not to concentrate on their

Court record,[1] explaining their reasons for such incompleteness, and contending that their language during a Referee's hearing cited by appellant in No. 18,808 during the June 5th argument of these appeals was qualified by other language used in that hearing and by a letter added to the District Court record after argument but not forwarded to this court in any way.[2] These explanations of an incomplete District Court record re-emphasize that the record before the District Court on December 22, 1969, was not sufficient to sustain petitioners' burden of proving[3] that they were entitled, under the decisions of this court cited at

"personal interests." See United States v. Larchwood Gardens, Inc., *supra* note 22.

1. For example, petitioners concede that the frequent listings of "room and meals $25.00" in Petitions for Allowances alleging "a complete breakdown" (79a) or "a detailed record" (88a) of disbursements were not complete and were because "the District Court admonished petitioners that it would not consider applications for per diem expenses in excess of $25.00 per day" (p. 13 of Petition). The creditors were entitled to inclusion of words such as "more than $25.00" through use of an asterisk or some similar form of explanation. Similarly, the last sentence of footnote 28 would not have been included if the petitioners had included in the record the information (p. 17 of their Petition) that "The District Court * * * directed Petitioners that all the facts relating to these charges were to be brought before the Court," or had called this direction to the court's attention when, during the argument, their counsel specifically requested the court to examine the documents mentioned in footnote 28, or had made clear in the statement of expenses the other statements on pages 17 and 18 of the Petition.

2. The Petition (p. 12) alleges that "the record of May 4, 1970, was submitted to this court * * * in such a manner that the Petitioners were effectively barred from answering or explaining the statement." The language from this May 4 hearing quoted in footnote 15 was objected to by appellant in No. 18,808 in the presence of petitioners' counsel during the oral argument and the court, on its own initiative, stated that it would not consider any material which was not in the official record forwarded from the District Court. By letter of June 8, a copy of which was sent to counsel for petitioners, a copy of the May 4 transcript was sent by counsel for appellant in No. 18,808 to the Clerk, who returned it to the sender by letter of June 10 (with copy to petitioners' counsel) saying: "The original of this transcript should be filed with the Clerk of the District

Court who will forward it to this office with a Supplemental Record in this case." Petitioners' counsel wrote our Clerk a letter on the same date, saying "We * * * wish to formally object to this effort * * * to further supplement the record without following the required procedure [referring to F. R. A. P. 27]." The transcript was forwarded by the District Court in July to this court as a supplement to the record and petitioners' counsel filed no application under F. R. A. P. 27 to strike it for any reason. Also, petitioners' counsel has not arranged to have the record in this court supplemented by the letter marked into evidence on 6/30/70 (see p. 12 of Petition). We believe that (1) the court should not ignore such language used in a judicial proceeding, (2) petitioners' counsel was alerted by the above correspondence that the transcript would probably be forwarded to this court, and (3) petitioners' counsel, rather than our Clerk, had the duty to check in the office of either the Clerk of the District Court or this court to see if the transcript was forwarded as suggested by the above correspondence. We note that formal applications are to be made by motion under F. R. A. P. 27 (mentioned in petitioners' counsel's letter) and not by letter. This court appreciates petitioners' counsel making clear that he did not intend the quoted language to be construed as it was by this court, as well as by counsel for appellant, and as the Referee warned petitioners' counsel that it might be construed (p. 12 of Petition). During a colloquy at the May 4 hearing between the Referee and petitioners' counsel, the Referee stated, without contradiction by such counsel, "The Trustee has not presented a plan * * *" (p. 5 of Document 785). Counsel has now called our attention to the place in the record where a plan submitted by the trustee and his counsel in 1968 is filed (Document 466).

3. See Woods v. City National Bank & Trust Co., 312 U.S. 263, 267–268, 61 S. Ct. 493, 85 L.Ed. 820 (1941) ; 6A Collier on Bankruptcy ¶ 13.02, p. 903 (14th Ed.).

page 235 of the slip opinion, to the third round of interim allowances which they were then claiming. ` Petitioners will have the opportunity to supplement the record before the District Court to sustain this burden as to interim compensation within the limits stated on page 239 of the slip opinion of August 18, 1970, but no good reason has been shown why they should be granted a second opportunity to show they are entitled to interim fees for the third period in excess of such limits.

We note, again, that "we are impressed * * * with the apparent success of the reorganization to date" (page 237 of August 18 opinion). Also we note that periodic awards of interim compensation in the future, as well as interim compensation for the period from September 1, 1969, to the present, may be granted in the discretion of the District Court if "necessary" [4] and after comment by the creditors and the Securities and Exchange Commission.

---

4. See In re McGann Co., *supra* 188 F.2d at 112, cited with approval in In re Solar Mfg. Corp., *supra* 190 F.2d at 274.