## In re FOUR STAR MUSIC COMPANY, INC., Debtor.

### Bankruptcy No. 77–30484.

United States Bankruptcy Court, M.D. Tennessee.

Aug. 15, 1984.

Frank G. Ingraham, William F. Long, Nashville, Tenn., for Jean Sopha.

James R. Kelley, Nashville, Tenn., for trustee.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This matter is before the court on the trustee's objection to the allowance of an administrative claim for accounting services. The issues are: (1) whether the employment arrangement between the trustee and the claimant allowed for the accumulation of unlimited compensable hours; (2) whether the compensation sought is reasonable; and (3) whether the claimant is entitled to recover a claim against the estate on the theory of *quantum meruit.* After consideration of the briefs and arguments of the parties, the court holds that the employment relationship was for a spe-cific weekly salary and did not permit the accumulation of unlimited hours; and under any construction of the facts, the total hours requested for compensation are unreasonable and not compensable. The claimant is also not entitled to recover on the theory of *quantum meruit.* The court finds that the claimant is entitled to additional salary of $495 and expenses of $9.23.

The following constitute findings of fact and conclusions of law as required by Rule 752 of the Federal Rules of Bankruptcy Procedure.

Four Star Music Company, Inc. ("Four Star") filed a petition under Chapter XI of the former Bankruptcy Act in March, 1977. Prior to the bankruptcy, Jean Sopha ("Sopha") was employed for two years by Four Star as a salaried bookkeeper. Sopha's duties included general accounting, copyright administration, office management, and royalty accounting. When Irwin A. Deutscher ("Deutscher") was appointed receiver of the Four Star estate,[1] he continued Sopha's employment from July, 1977 through July, 1983, primarily to collect tax information and perform royalty accounting. Sopha was assigned projects by Deutscher's employees. Sopha would bill Deutscher for work performed, Deutscher's staff would review Sopha's invoice and submit a check request for Deutscher's approval. Deutscher would then issue the appropriate remittance from his Four Star trustee account. Sopha was compensated at the rate of $10 per hour.

In February of 1980 Sopha submitted an invoice for approximately 80 hours of work. Deutscher objected to the amount of the request. One of Deutscher's employees instructed her to submit the invoice in two separate bills and to submit all subsequent invoices for less than 50 hours per week. Sopha thereafter submitted weekly invoices for less than 50 hours and received a weekly check from the Four Star estate in the amount of $495.[2] Sopha alleged that she

---

1. Deutscher was appointed trustee when Four Star was adjudicated a bankrupt in July of 1980.

2. Sopha testified that she received a check for approximately $495 virtually every week, in-

often worked more than the 49.5 hours per week reflected on her invoice and that she would carry over the extra hours to subsequent weeks. By August of 1983, Sopha asserted that she had accumulated 1,923.5 "extra" hours. Sopha did not inform Deutscher of her practice or the mounting arrearage.

On July 5, 1983, a normal weekly check request was submitted to Deutscher for approval. Deutscher questioned Sopha's continued employment with Four Star because her services were no longer necessary to administer the estate. The payment request was refused and Sopha was informed that her services were no longer required. Sopha then filed a claim in the bankruptcy case for an administrative priority in the amount of $19,259.74 [3] calculated as the 1,923.5 hours of accumulated time at $10 per hour plus expenses.[4] Deutscher objected. A hearing was held April 10, 1984.

## I.

Sopha's application facially appears to be an application for compensation of a "professional person" under Rule 219 of the (former) Bankruptcy Rules. Professionals such as accountants and attorneys, however, are compensated only if court approval for their employment was obtained prior to the rendition of services. Former Bankruptcy Rule 215(a) provides that "[n]o attorney or accountant for the trustee or receiver shall be employed except upon order of the court." *See also In re Futuronics Corp. v. Arutt, Nachamie & Benjamin*, 655 F.2d 463, 469 (2d Cir.1981); *In re J.M. Wells, Inc.*, 575 F.2d 329, 331 (1st Cir.1978); *In re Hucknall Agency, Inc.*, 1 B.R. 125 (Bankr.W.D.N.Y.1979) (account who performed $14,000 worth of professional services denied compensation because his employment had not been authorized). No prior court authorization for her employment was obtained.

■ If Sopha is seeking compensation as a professional, her appointment would have to be validated *nunc pro tunc* to July of 1977. This court has established strict guidelines for *nunc pro tunc* employment of professionals. *See In re Twinton Properties Partnership*, 27 B.R. 817, 819 (Bankr.M.D.Tenn.) *adopted* 33 B.R. 111 (M.D.Tenn.1983). The applicant must demonstrate by clear and convincing evidence that the parties contracted for the performance of services, that the party for whom the work was performed approves the *nunc pro tunc* entry of the order, that all creditors and parties in interest have been provided an opportunity to object, that no objection is tendered, that all statutory criteria for employment are satisfied, that the work was performed in an efficient and proper manner, that no actual prejudice inured to the estate, that the failure to solicit court approval is satisfactorily explained, and that the applicant has exhibited no pattern of negligence in soliciting court approval. Sopha failed to demonstrate several of the required criteria, including that Deutscher does not object to the entry of a *nunc pro tunc* order, and that all statutory prerequisites for employment are satisfied. She has also failed to explain why she did not seek court approval during the six years of her employment.

■ Sopha's alternative theory for allowance of her claim must be former Bankruptcy Rule 215(d) which provides:

A trustee or receiver authorized to operate the business and manage the property of the bankrupt may, without specific authorization under subdivision (a) of this rule, continue or engage any attorney or accountant as a salaried employee

---

cluding several weeks during which she was disabled and did not work. [Tr. p. 55].

**3.** The claim is also the subject of a lawsuit filed by Sopha in the Chancery Court for Davidson County, Tennessee against Deutscher individually, Acuff-Rose and JAT Music. Sopha sued Acuff-Rose for $6,170 and JAT Music for

$5,480.75 in the Chancery Court lawsuit. Sopha is requesting the entire balance of the $19,259 claim in the instant proceeding.

**4.** Sopha submitted expenses of $9.23 for June 23, 1983, $11.74 for July 26, 1983, $1.05 for August 4, 1983, $2.40 for postage on July 30 and August 2, 1983, and $0.32 for August 4, 1983.

if such employment is necessary in the operation of the business and management of the property of the bankrupt.

As noted *supra,* Sopha's claim is more consistent with an application for hourly professional compensation. "Salary" connotes a specific, periodic amount of compensation.[5] The court nonetheless finds that Deutscher and Sopha intended that Sopha be employed by Four Star on a salaried basis. Although compensation was based upon hourly services, the consistency and regularity of the compensation translated into a salary arrangement.

■■■ The burden of proof is on the applicant to demonstrate entitlement to compensation. *See Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941). An employee of a bankruptcy estate is not entitled to compensation in excess of that authorized by the trustee. *See Kennedy v. Nathans (In re Chandler),* 43 F.2d 71, 72 (3d Cir.1930) (claimant was employed by the trustee to perform accounting work at an agreed compensation; he was fully compensated for the services in accordance with the agreement, and therefore no further compensation is warranted). The court must be deferential to the trustee's recommendation concerning the allowability and reasonableness of salaries and expenses. As the court noted in *In re Siegel,* 252 F. 197, 198 (S.D.N.Y.1918):

> The court must look to the receiver as the adequate custodian, and the sole person who can establish any claims for administration, except such as are otherwise expressly authorized by statute. Any services rendered by those not authorized by the receiver must be deemed to be on the account of the creditors who undertake them. They are merely volunteered, and the estate, even though actu-

ally benefited, owes nothing for them. There is no hardship in this, but absolute justice.

■■■ The court finds the employment arrangement between Sopha and Deutscher provided for $10 per hour up to a maximum "salary" of $495 per week. Sopha failed to prove that Deutscher agreed to any open-ended compensation arrangement in excess of $495 per week. The only consistent and persuasive proof is that $495 per week was the agreed upon compensation. Sopha was regularly accepting $495 per week for her services and Sopha regularly billed for 49.5 hours per week. Deutscher indicated that the maximum intended rate of compensation was $495 per week and that he never authorized any greater compensation. Sopha does not allege that she was given permission to work the excess hours, but bases her claim on the fact that she was never specifically told she could not work more than 50 hours. Sopha alleges that when she was told to split the invoice in February of 1980 and to submit subsequent invoices of less than 50 hours, she was implicitly authorized to work the additional hours. In the absence of evidence that Deutscher authorized the accumulation of excess hours, such a unilateral mistake or misunderstanding cannot be the basis for compensation from the estate.

The record is empty of persuasive evidence that Deutscher or his agents were aware of or acquiesced to the carryover practice. Sopha conceded that she never brought the practice to Deutscher's attention, despite the gigantic accumulation of extra hours. Although Sopha worked at the direction of and in cooperation with other Deutscher employees none of Deutscher's employees were examined to substantiate Sopha's theory of the employment arrangement.[6] Robert S. Gibson, a

---

**5.** Blacks Law Dictionary defines "salary" as:

A reward or recompense for services performed. In a more limited sense, a fixed periodical compensation paid for services rendered. A stated compensation paid periodically as by the year, month, or other fixed period, *in contrast to wages which are nor-*

*mally based on an hourly rate.* (emphasis added).

**6.** During the trial, Sopha's counsel requested an indefinite continuance to procure the testimony of Joseph W. Henderson and John King, former Deutscher employees. The court denied the motion because Sopha's counsel voluntarily chose not to subpoena either Mr. Henderson or Mr.

Deutscher employee, testified that he had knowledge that on one occasion Sopha's billing was approximately one or two months behind, [Tr. p. 89], however, Gibson also testified that, despite a close working relationship with Sopha, he knew of no arrangement whereby Sopha would be paid more than $495 per week. [Tr. p. 85]. The two documents submitted into evidence to substantiate Sopha's position that Deutscher or Deutscher's employees knew or should have known that the extra hours were being worked are not convincing. The first document was an invoice for $490 submitted on January 9, 1981 for services performed between December 17 and December 20, 1980. Sopha argues that the gap between the rendering of services and the invoice evidences her procedure of accumulating hours. A 19-day lag, particularly with the intervention of both Christmas and New Years, indicates neither a pattern of carryover nor demonstrates acquiescence by the trustee or his staff to a contract of unlimited hourly compensation. The second document was an invoice dated June 26, 1983 which reflected hours from December 22 through December 29, 1982.

This was the last invoice submitted and resulted in Sopha's immediate termination as an employee. If probative at all, the evidence demonstrates that upon learning of Sopha's claims, Deutscher terminated her employment. None of the other invoices submitted during the six years of her employment with Four Star were tendered into evidence to substantiate her claims.

There is no explanation for Deutscher's opposition to Sopha's application other than an honest and good faith belief that Sopha is not entitled to the additional requested compensation.[7] Funds are available to pay the claim and Deutscher testified that Sopha performed a necessary and valuable service to the estate.[8] Deutscher paid Sopha for six years prior to her termination in July of 1983. The court finds that Sopha has been fully and adequately compensated for her services at the rate of $495 per week with the exception of the an unsigned check from July 5, 1983.[9]

## II. REASONABLE COMPENSATION

 Even if the employment arrangement between Sopha and Deutscher did not

King. Sopha's counsel stated that he had spoken with Mr. Henderson and Mr. King several days before trial and they had agreed to attend without the necessity of subpoenas. Their absence was not explained. Rule 8(a)(4) of the Local Rules of the United States District Court for the Middle District of Tennessee requires a witness to be subpoenaed and "[i]f the foregoing requirement has not been met, a motion for continuance grounded upon failure of a witness to be served or to appear shall not be granted except upon a showing of extenuating circumstances." Sopha's counsel asserted no facts to support a finding of "extenuating circumstances." If voluntary election not to serve a subpoena constituted "extenuating circumstances," the exception would certainly swallow the rule and trials would be conducted piecemeal whenever a witness chose not to appear. The court also refused to allow Mr. Henderson's deposition to be read into evidence over objection because the deposition constitutes hearsay not within the enumerated exceptions in Rule 801 of the Federal Rules of Evidence.

7. Sopha overemphasizes the significance of Deutscher's praise of and continued confidence in her work. There is no doubt that Sopha performed valuable services for Four Star.

Deutscher's satisfaction with the services was premised on the understanding that they were being performed for $495 per week. Deutscher opined that the value of her services did not exceed $495. On both instances that Sopha requested more compensation, Deutscher objected. Deutscher's expression of satisfaction with Sopha's performance is, therefore, neither evidence of acquiescence to additional compensation nor an indication of enhanced value to the estate.

8. Sopha apparently was a necessary employee during the time for which she has already been compensated and the compensation she received was reasonable. If Deutscher or another party in interest were objecting to the reasonableness of Sopha's compensation *in toto,* the court would have to address whether the estate could recover the payments already made to Sopha as unauthorized or excessive. Because the trustee expressed satisfaction with the $495 per week arrangement and represented that the estate received equivalent benefit from Sopha's services that issue is not before the court.

9. Deutscher does not dispute that Sopha is entitled to the $495 represented by the unsigned check.

preclude the accumulation of "unlimited" hours, the Bankruptcy Act requires that compensation expended from bankruptcy estates be reviewed for necessity and reasonableness and approved by the court. Section 62(a)(1) of the former law provides:

The actual and necessary costs and expenses incurred by officers, other than referees, in the administration of estates shall, except where other provisions are made for their payment, be reported in detail under oath, and examined and approved or disproved by the court. If approved, they shall be paid or allowed out of the estates in which they were occurred.

Former Bankruptcy Rule 219(c)(1), although primarily relevant to applications for compensation by professional persons, provides that:

The compensation allowable by the court to a trustee, receiver, marshal, attorney, accountant, or other person entitled to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.

The principle of strict economy governs compensation in bankruptcy cases under the former Act. *See, e.g., In re Imperial "400" National, Inc.*, 432 F.2d 232, 238 (3d Cir.1970); *Official Creditors' Committee of Fox Market, Inc. v. Ely*, 337, F.2d 461, 465 (9th Cir.1964); *Goldie v. Cox*, 130 F.2d 690, 693 (8th Cir.1942). The Bankruptcy Act requires special efficiency of performance by those who work for an estate and the court must scrutinize requests for administrative expenses to apply the statutory standard strictly. *See Longbein v. Kirkland (In re TMT Trailer Ferry, Inc.)*, 577 F.2d 1296, 1303 (5th Cir.1978); *York International Building, Inc. v. Chaney*, 527 F.2d 1061, 1075 (9th Cir.1975). The burden of proof is on the applicant to demonstrate the performance of valuable services, *see Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941), and compensation is limited to the time that was *necessarily required* to accomplish the task *rather than* the time *actually expended. See e.g., In re Imperial "400" National, Inc.*, 432 F.2d 232, 237 (3d Cir.1970).

 The number of hours for which Sopha seeks compensation is patently unreasonable and inconsistent with the policy of economy of administration. The reasonableness of the time expended by Sopha to accomplish specific tasks was seriously questioned by the testimony of Doris Abshire, an employee of a music publishing house who had experience in the areas of work performed by Sopha for this estate. Ms. Abshire testified that one project which Sopha billed for 192 hours should have been performed in only 16 hours. [Tr. p. 83]. Although Abshire's testimony concerned only one project representing approximately 10% of Sopha's claim, the remainder of Sopha's claim strains credibility. The time records assert Herculean abilities for Ms. Sopha. The court would have to believe that Sopha efficiently and productively work as much as 21 straight hours without breaks, without eating and without any distractions over a sustained period of months. Sopha worked with little or no sleep and entirely without supervision. Sopha asks the court to accept that she performed at this level not merely on one or two occasions, but over the last three years of her employment with Deutscher. Sopha's claims are simply not believable. Although independent corroboration of a witness' testimony is not usually required, the court is not obligated to blindly accept testimony that is inconsistent with normal patterns of human behavior. The court is not required to accept inherently improbable or unreasonable, self-serving testimony. *New England Merchants National Bank v. Rosenfield*, 679 F.2d 467, 473 (5th Cir.1982). The trier of fact is at liberty, within the bounds of reason, to reject in whole or in part the testimony of a witness which does not convince the trier of fact of its merit. *NBO Industries Treadway Companies, Inc. v. Brunswick Corp.*, 523 F.2d 262, 277 (3d Cir.1975). No other persons were

called to testify in support of the reasonableness of Sopha's claim. The court cannot determine whether the hours requested for compensation are merely exaggerated, inflated by inefficiency, or created by fabrication; however, the court finds they are not reasonable and cannot be compensated from the Four Star estate.[10]

### III. QUANTUM MERUIT

Sopha argues that she should be compensated irrespective of an employment relationship with Deutscher because her services conveyed a valuable benefit to the estate. *See, e.g., Dieterle v. Gatton,* 366 F.2d 386, 389 (6th Cir.1966) (even if parties failed to create binding, express contract, rendition of beneficial services by plaintiff may create obligation on part of defendant). Specifically, Sopha argues that her services produced $8,000 in royalty checks that were tendered to the trustee and became assets of the estate.[11]

■ The theory of *quantum meruit* permits recovery only if a benefit was conferred to the Four Star estate by the *additional* hours allegedly performed. No proof was offered that the royalty checks were a direct result of hours in excess of the 49.5 hours per week for which she has already been compensated. Royalty accounting was a normal and everyday incident of her employment. Sopha simply

failed to demonstrate that her additional services resulted in additional benefit to the estate. Furthermore, the proof indicates that at least 533.4 of the invoiced hours were performed for the benefit of Acuff-Rose.[12] The Four Star estate should not be held accountable for services rendered to and for the benefit of another. The court, therefore, finds that the Four Star estate has received no unjust enrichment at the expense of Sopha's labor.

Accordingly, Sopha's claim is disallowed except for $495 of unpaid wages and $9.23 for unreimbursed expenses.

An appropriate order will be entered.

---

**10.** Even if the court did find an employment arrangement on the terms asserted by Sopha *and* approved the reasonableness of the itemized hours, the court would disallow the 165 hours worked after July 5, 1983, the date when both parties testified that the employment relationship was terminated. Services performed after the expiration of authorization are not compensable. *See, e.g., Newport v. Sampsell,* 233 F.2d 944, 946 (9th Cir.) *cert. denied,* 352 U.S. 942, 77 S.Ct. 264, 1 L.Ed.2d 238 (1956) (after the trustee terminated the accountant's employment, the accountant continued to render services and submitted an invoice for $161,400; the court of appeals sustained the disallowance of the claim holding that after the authorization of employment expired, no additional compensation was allowable). The $15.51 claimed as expenses during this period would also be denied.

**11.** Because Sopha is not entitled to the requested compensation, the court rejects Sopha's re-

quest for a first lien on these checks to secure payment of her claim.

**12.** Sopha invoiced 59 hours for "Acuff-Rose royalty problems and computer reports," 319.9 hours for "song catalogue for Acuff Rose," 85 hours for "research for Acuff-Rose," 42.5 hours for "searching files for Acuff-Rose," 27 hours for "continued work on Acuff-Rose information," and 18 hours for "Palace Statement Reports for Acuff Rose." The court is unable to determine how these 533.4 hours benefitted the Four Star estate. These hours were for the benefit of Acuff-Rose and are not compensable at the estate's expense. It is significant that in her Chancery Court lawsuit, Sopha differentiates between hours expended for Four Star and those hours performed for JAT Music and Acuff-Rose. The claim against Four Star is for approximately $7,600, only 40% of the claim asserted in the bankruptcy case. Sopha has made no similar differentiation in her application for compensation from the Four Star estate.