**In the Matter of SCHATZ FEDERAL BEARINGS COMPANY, INC., Debtor.**

**Bankruptcy No. 80 B 20101.**

United States Bankruptcy Court, S. D. New York.

Feb. 22, 1982.

---

Otterbourg, Steindler, Houston & Rosen, P. C., New York City, for debtor.

Stroock & Stroock & Lavan, New York City, for Creditors' Committee.

## DECISION ON MOTION TO REARGUE APPLICATION FOR DIRECTORS' COMPENSATION AND OUT OF POCKET EXPENSES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Two former directors of the above-captioned debtor in this liquidating Chapter 11 case seek an order pursuant to Code § 503(b)(1)(A) authorizing payment of reasonable compensation for a portion of the time when they acted as directors. J. Hamilton Crawford, Jr. originally applied for

compensation in the sum of $16,500 for an estimated 148 hours of services rendered to the debtor, while Thor W. Kolle, Jr. applied for $14,800 as compensation, based upon 53 hours attending board meetings, 30 hours travelling to and from such meetings and 65 hours of additional time expended for the debtor.

In a decision dated December 10, 1981, this court noted that both Messrs. Crawford and Kolle were compensated by the debtor at the rate of $100 per directors' meetings, each receiving $1,100 for the eleven meetings they attended. However, the court found that there was insufficient documentation to support reimbursement of the applicants' out of pocket expenses. Therefore, the applicants' request was denied without prejudice to renewal, if they wished, upon a properly supportable foundation. Mr. Kolle had also applied for an additional $25,000 for financial consulting services performed between November 1, 1980 to March 4, 1981. This application was vigorously opposed by the creditors' committee when it was submitted earlier in this case and was thereafter withdrawn, and was again objected to when resubmitted by Mr. Kolle. The application for consulting services of $25,000 was denied in this court's decision on December 10, 1981, because Mr. Kolle had not obtained court authorization for such professional services as required under Code § 327(a), and he was, therefore, not entitled to compensation under Code § 330.

Thereafter, Messrs. Crawford and Kolle sought reargument with respect to their services for the debtor, submitting additional documentation to support their position that they filled the vacuum at a time when they, with the debtor's president, Mr. Herbert Kishbaugh, were the remaining management who were actively involved in the new administration of the debtor's estate. Additionally, they sought out of pocket expenses of approximately $3600 each.

Reargument was allowed so as to enable the erstwhile directors to argue in support of their claims for services performed in administering this estate, over and above their services as directors, for which they were compensated by the debtor at the rate of $100 per meeting, for a total of $1,100 for each director.

In reviewing the applications it is apparent that what is sought here as additional compensation relates not to their retention as directors, but instead, as stated in Mr. Crawford's affidavit sworn to December 29, 1981, involves: "Participating in the administration of the Debtor's business ..."; "Participating in an ongoing critical analysis of the Debtor's ability to continue to operate ..."; "Participating in the resolution of various personnel matters ..." and performing such services that were "beyond the scope of directors' duties."

In this court's decision dated December 10, 1981, it was noted that Code § 330(a), which applies to the compensation of the trustee and professionals employed by the trustee with the court's approval, as required under Code § 327(a), does not apply to directors of the debtor. Therefore, it was stated that reference must be made to Code § 503(b)(1)(A) which deals with the actual necessary costs and expenses of preserving the estate. Accordingly, the former directors were allowed to renew their applications to the extent of out of pocket expenses incurred by them in performing services for the debtor. However, while their compensation at the rate of $100 per directors' meetings is not governed by Code § 327(a), their ongoing additional administrative services beyond the scope of traditional directors' duties are within the contemplation of Code § 327(a).

In the *Matter of Seatrain Lines, Inc.*, 13 B.R. 980 (Bkrtcy.S.D.N.Y.1981), Judge Ryan concluded that a debtor's retention of maritime engineers would not affect the administration of its reorganization. Thus, they are not the kind of professional persons whose retention requires court approval under Code § 327(a). He observed as follows: (page 981)

"Court approval is required for the retention of attorneys, accountants, appraisers, auctioneers *and persons in other professions intimately involved in the ad-*

*ministration of the debtor's estate."* [Emphasis added]

 Manifestly, the applicants were intimately involved in the administration of the debtor's estate. The creditors' committee urges a denial of any further compensation for the applicants because they argue that it was perceived more than a year ago that rehabilitation was not feasible and that liquidation was inevitable. During the interim the debtor sustained additional losses of over one million dollars which they ascribe to these applicants as a result of their administration of this estate. On the other hand, the applicants contend that they diligently labored at attempting to effect a rehabilitation and sought additional financing from various sources. They also wanted to preserve the jobs for the many employees at the debtor's plant and that, unfortunately, they were unable to do so. However, the applicants' right to compensation is not measured by their success or, as in this case, their lack of success. The applicants were not salaried employees of the debtor. Apart from their appointment as directors, for which they were compensated, the applicants were retained by the debtor because of their professional and financial acumen. Both applicants are attorneys who have substantial experience in the field of corporate finance. As such, they are clearly within the category of professional persons who may be employed by the debtor only with the court's approval, as required under Code § 327. No such approval was requested or obtained with regard to their services. Indeed, there is no evidence that the debtor ever agreed to compensate the applicants in any amount for their additional ongoing services in the administration of this estate. Absent a court order for their retention, as required under Code § 327(a), the creditors committee may properly object to the payment of any fees to the applicants on a *quantum meruit* basis.

The failure to comply with Code § 327(a) is not merely a technical omission that may be cured by a *nunc pro tunc* order. The applicants were not regularly employed professional persons on salary, who could be retained after the filing of the Chapter 11 petition, or who were thereafter retained on a salaried basis as a replacement for previously retained salaried professionals, as authorized under Code § 327(b). They neither received nor were they entitled to receive, any salary. Therefore their employment had to be approved by the court in accordance with Code § 327(a), which requires a showing of disinterest. A "disinterested person" within the meaning of Code § 101(13)(D) must be a person who *"is not* and was not, within two years before the date of the filing of the petition, a *director,* officer, or employee of the debtor . . .". [Emphasis added] Had the debtor applied to the court for permission to retain the applicants under Code § 327(a) to perform services beyond the scope of their paid duties as directors, the creditors' committee would have been permitted to voice their objections to these applicants on the ground that as directors they were not "disinterested" persons who could be additionally compensated under Code § 330 for ongoing services beyond those traditionally performed by directors. Having proceeded in the face of this apparent disqualification the applicants cannot now be heard to invoke equitable principles so as to seek a waiver of Code § 327(d) on a *nunc pro tunc* basis for an allowance of compensation on a *quantum meruit* basis. Hence, upon reargument, the applicants' request for additional fees for their services is denied.

 The applicants' allowable out of pocket expenses may be reimbursed under Code § 503(b)(1)(A). The applicants contend that on July 18, 1980, the debtor's board of directors authorized a payment to each independent director of $4,000 to defray the cost of legal expenses that each such director was expected to incur. When this information was later brought to the attention of the court, the applicants were ordered to return the $4,000 they each recovered because such payment occurred at a time when the debtor was losing substantial sums and had difficulty meeting its payroll. However, the applicants returned their

$4,000 stipends in 1981, after having declared these payments as ordinary income for the 1980 tax year. Hence, they paid approximately $2000 in federal, state and local taxes on that payment during 1981. They therefore request reimbursement for their excess tax payment.

Undoubtedly, the applicants overpaid their 1980 income taxes to the extent that they were required to return the $4,000 payments in 1981 after having included the payments as income in 1980. However, this error may be remedied simply by their filing with the Internal Revenue Service a request for a refund of the excessive 1980 taxes they paid. Since this refund is still available and not barred by the limitations period, there is no reason why the debtor's estate should compensate the applicants for their refundable excessive 1980 taxes.

Both applicants, as directors of the debtor, retained a New York City law firm to represent them in connection with legal matters affecting them individually and arising by reason of their status as directors of the debtor. For these services, they paid the law firm a total of $1600 each for representing them as directors for the period from July 1, 1980 through October 31, 1980. The $1600 that each applicant paid for legal representation as a director of the debtor constitutes an allowable actual, necessary cost and expense of preserving the debtor's estate within the meaning of Code § 503(b)(1)(A). Since the directors were not covered by insurance provided by the debtor to protect their individual liabilities arising out of their services for the debtor, as is done by many corporations, these directors were justified in obtaining legal representation with respect to their liabilities as directors. Therefore, each applicant's claim for $1600 for legal services shall be allowed as an administration expense.

SUBMIT ORDER on notice.