**In re SAROCA CORPORATION, Debtor.**

**Bankruptcy No. 282–00114.**

United States Bankruptcy Court,
D. Maine.

Jan. 28, 1985.

P. Benjamin Zuckerman, Verrill & Dana, Portland, Me., for Jan Dorfman.

**534**

Dennis G. Bezanson, South Portland, Me., Trustee.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

In this proceeding Jan W. Dorfman has applied for reimbursement of out of pocket expenses as an administrative expense under section 503(b)(1)(A) and 503(b)(3)(D) of the Bankruptcy Code. Dorfman is the only interested stockholder and director of the debtor. Two other stockholders and directors abandoned the debtor during 1981 after paralyzing disputes among the three equal stockholders. The debtor became dormant in September of 1981 as a result of these stockholder disputes.

On March 17, 1982, an involuntary chapter 7 petition was filed against the debtor. The debtor ultimately obtained counsel, and on June 3, 1982, the case was converted to one under chapter 11 of the Code.

In addition to being a stockholder and director of the debtor, Dorfman is the designer of a multi-purpose boat, (the Saroca) a major asset of the debtor, and claims to hold the relevant patents, trademarks, and trade names. These intellectual property rights were conveyed by Dorfman to the debtor prior to the stockholder disputes. Dorfman claims that he owns these intellectual property rights, or, in the alternative, that he holds an existing royalty contract encumbering those intellectual property rights if the debtor's ownership claims are found to be superior to his own.[1]

Shortly after the debtor ceased operations in September of 1981, Dorfman engaged P. Benjamin Zuckerman, of the firm of Verrill and Dana, to represent him. Dorfman then undertook to find purchasers and/or investors who would revitalize the dormant debtor.

His efforts continued post-filing, and largely through these efforts a new entity, The Signature Group, Inc., was created. The objective of Signature Group was to purchase the debtor's assets and undertake production and sale of the Saroca boat. Dorfman is a director of Signature Group and is a party to an agreement with Signature Group which provides for payment to Dorfman of 1½% of gross sales of the Saroca during the life of the patent and .75% thereafter. The agreement provides for an advance payment to Dorfman of $25,000 upon signing.

On March 15, 1984, after notice and a hearing, a sale of the debtor's assets to Signature Group was authorized by this court. That sale will result in a substantial dividend to creditors.

Dorfman seeks to be reimbursed, as an administrative expense, for $9,667.16 he expended for telephone calls and for travel expenses in the amount of $3,795.00. He also seeks to be reimbursed for legal expenses incurred by him in the amount of $12,811.97.

Dorfman argues that these expenses were actual and necessary for preservation of the estate within the meaning of section 503(b)(1)(A) or were actual, necessary expenses incurred by him, an equity security holder, in making a substantial contribution in this chapter 11 case within the meaning of section 503(b)(3)–(D).

The court concludes that Dorfman, an equity security holder, has made a substantial contribution to this chapter 11 case and is entitled to be reimbursed, as an administrative expense, for his telephone expenses of $9,667.16 and his travel expenses of $3,795 under 11 U.S.C. § 503(b)(3)(D), but that the legal expenses incurred by him were for his personal benefit and cannot be allowed.

Dorfman's request for reimbursement of expenses under subsection (b)(3)(D) of section 503 is the first of its kind in this court. That subsection is derived from Chapter X, sections 242 and 243 of the Bankruptcy Act of 1898. 11 U.S.C. § 642, 643 (repealed 1978). See H.R. Report 595, 95th Cong.,

---

1. The debtor's schedule B–2 lists "Patents and Boat designs, Trademark Registration" as assets, with the notation "ownership of patents and trademark disputed by Jan W. Dorfman."

1st Sess. 355 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; 3 Collier, 15th ed. ¶ 503.04[d]. *In re Richton International Corp.*, 15 B.R. 854, 5 C.B.C.2d 1019 (Bankr. S.D.N.Y.1981).

Section 503 of the Code provides as pertinent:

> (b) after notice and a hearing, there shall be allowed administrative expenses, ... including—
>
> .    .    .    .    .
>
> (3) the actual, necessary expenses, other than compensation and reimbursements specified in paragraph (4) of this subsection, incurred by—
>
> (D) a creditor, ... an equity security holder ..., in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
> .    .    .    .    .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant; ....

Applications for allowance of administrative expenses under section 503(b)(3)(D) and (4) must be carefully scrutinized. Such applications are filed after the fact, that is, after the services have been performed or the expenses have been incurred, and without prior approval, and in many instances, without the court's knowledge. In the case of requests for compensation for professional services, such services are rendered without the employment of such persons having been approved by the court as is usually the case. See 11 U.S.C. 1103(a).

In this particular case, however, the court was aware of Dorfman's extensive activity. He was the only stockholder and/or officer of the debtor that expressed any interest in the debtor during the administration of the chapter 11 case.[2] At the hearing on his application Dorfman testified that he dealt with forty or fifty entities in his efforts to find financing for the debtor over a period of two years. The creditors' committee supports Dorfman's application for reimbursement of his telephone and travel expenses. Without Dorfman's efforts a dividend to creditors in this case would be unlikely.

The telephone bills were necessarily incurred because the dormant debtor had no office and no telephone. It was necessary for Dorfman to use his home phone to confer with prospective purchasers or investors and even, in fact, to confer with counsel for the debtor and counsel for the creditors' committee. Furthermore, most prospective investors were located at considerable distances and outside of this state. This, of course, also accounted for Dorfman's extensive travel expenses. Dorfman's telephone and travel expenses were actual, necessary expenses incurred by an equity security holder in making a substantial contribution to this chapter 11 case, within the meaning and intent of 11 U.S.C. § 503(b)(3)(D).

■ Dorfman's request for reimbursement of $12,811.97 in legal expenses incurred by him presents a different issue. Dorfman's legal expenses exceed $50,000. Dorfman testified that he estimated about one half of this total was devoted wholly to the debtor. He seeks reimbursement, however, for $12,811.97, or about one fourth of the $50,000 amount. The court can not allow reimbursement in any amount.[3]

It was abundantly clear throughout this case that Zuckerman represented Dorf-

---

**2.** Dorfman was, however, never designated as "debtor" under B.R. 9001(5)(A) or former B.R. 901(6)(A).

**3.** Section 503(b)(3)(D) and (b)(4) appear to require that the application be filed by the professional. Zuckerman did not file the application, but he did file an itemization in support of Dorfman's application. The court considers that procedure satisfactory for this case.

man's personal interests. Dorfman consistently claimed a personal interest in the intellectual property rights in the Saroca boat, and it was the court's clear impression that it was Dorfman's rights that Zuckerman was working to protect.

On July 12, 1982 this court entered an order authorizing employment of the firm of Curtis, Thaxter, Lipez, Stevens, Broder and Micoleau as counsel for the debtor. That firm represented the debtor throughout the case and continues to do so.

On September 9, 1982 the debtor and Dorfman commenced an adversary proceeding in this court against three defendants in order to protect the debtor's and Dorfman's intellectual property rights. The court appointed Thomas C. O'Konski, of Cesari & McKenna, Boston, Mass. as special counsel to represent the debtor in that proceeding. Zuckerman vigorously represented Dorfman.

Dorfman testified that he frequently used Zuckerman in matters that involved only the debtor rather than debtor's counsel because of Zuckerman's greater expertise and excellence as a lawyer. This is a luxury that the debtor's creditors should not be called upon to underwrite. The court, upon notice, and after hearing has already allowed fees and expenses in the amount of $41,780.61 to Curtis, Thaxter, Lipez, Stevens Broder & Micoleau, debtor's counsel and $8,370 to Mr. O'Konski, who was specially appointed to represent the debtor in the adversary proceeding referred to above.

Dorfman relies upon *In re Richton*, 15 B.R. 854, 5 C.B.C.2d, 1019 (S.D.N.Y.1981) and *In Re Schatz Federal Bearings Company, Inc.*, 17 B.R. 780, 6 C.B.C.2d 66 (S.D.N.Y.1982) as support for his application for reimbursement for legal fees. Both cases are distinguishable. In *Richton* the court emphasized that the debtor's estate was well able to pay the fees "with no impairment of other creditors." *Id.*, 15 B.R. 854, 5 C.B.C.2d, at 1022. In *Schatz Federal Bearings* the court disallowed most of the applicants' requests but did allow reimbursement of a minimal amount

for legal fees incurred by them by reason of their status as directors. The facts of this case are different. It is obvious that Zuckerman was hired to protect Dorfman's personal interests in the intellectual property rights to the Saroca boat. This he did with great success. The posture of this case, after the sale of the debtor's assets, makes it clear that any allowance to Dorfman for legal fees incurred by him would be paid by the debtor's creditors. This would be unfair.

An appropriate order will be entered.