In re WINDSOR COMMUNICATIONS GROUP, INC. t/a Norcross-Rust Craft Greeting Card Publishers, Debtor.

WINDSOR COMMUNICATIONS GROUP, INC. t/a Norcross-Rust Craft Greeting Card Publishers, Plaintiff,

v.

ROGERS AND ROGERS, INC., Defendant.

Bankruptcy No. 82–03714K.
Adv. No. 84–0940K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 14, 1985.

See also 54 B.R. 504.

Mary F. Walrath, Philadelphia, Pa., Michael Crames, New York City, for debtor.

L.J. Lichtenstein, Marvin Krasny, Philadelphia, Pa., for Creditors' Committee.

Edward I. Swichar, Philadelphia, Pa., for defendant/Rogers and Rogers, Inc.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

A motion by the plaintiff-debtor for partial summary judgment on a complaint for turnover of estate property is before the Court. The narrow issue raised by the motion is whether the defendant, a collection agency, is a professional person within the meaning of 11 U.S.C. § 327(a), which requires professional persons to seek court approval of their employment by a trustee or debtor-in-possession before rendering services.

Because we find that defendant is a professional person within the meaning of 11 U.S.C. § 327(a), we will grant partial summary judgment in favor of the plaintiff-debtor.

The relevant facts are as follows:

On August 5, 1982, an involuntary petition under Chapter 7 of the Bankruptcy Code ("Code") was filed against Windsor Communications Group, Inc. ("Windsor").

The case was converted to a case under Chapter 11 of the Code on August 25, 1982. Windsor operated as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 from August 25, 1982 until October 5, 1984, when an Order was entered confirming Windsor's Plan of Reorganization.

Rogers & Rogers, Inc. ("Rogers") is engaged in the collection of commercial debts, such as trade accounts receivable. Prior to the commencement of the involuntary case against Windsor, Rogers was employed by Windsor to effect the collection of many of its accounts receivable. As part of the collection process, Rogers was authorized to engage local counsel, when necessary, to file suit against delinquent account debtors. Upon receipt of funds, Rogers would deduct its commission and costs and remit the balance of the funds to Windsor.[1]

Windsor and Rogers had an ongoing relationship for a period of years prior to the filing of the involuntary petition. At the time the petition was filed, Rogers was in the process of collecting debts for Windsor. Rogers continued its activities on behalf of Windsor after the petition was filed.[2] Although Rogers was aware of the pending bankruptcy case, Rogers did not seek or obtain a court order authorizing it to continue to collect Windsor's accounts receivable.

Windsor filed this adversary proceeding against Rogers on August 21, 1984. The complaint seeks turnover of all of Windsor's accounts receivable files, an accounting of all funds collected by Rogers or its agents on behalf of Windsor which have not been remitted to Windsor, and damages allegedly due to the continuation of collection activity by Rogers without court authorization. The instant motion for partial summary judgment seeks a determination of the liability of Rogers for the turnover of the files and funds which have been retained by Rogers. The amount of that liability is subject to dispute and will be the occasion for trial once the Court has determined the issue of liability.

Under Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to the instant proceeding by Bankruptcy Rule 7056, summary judgment can be granted only "if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Court of Appeals for the Third Circuit has characterized summary judgment as "a drastic remedy," and has stated "that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981), *citing Ness v. Marshall*, 660 F.2d 517 (3d Cir.1981). Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Nonetheless, in opposing a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." Fed.R. Civ.P. 56(e).

Windsor argues that the rule is absolute in the Third Circuit that employment of a professional person must be authorized by the court in order for that professional to

---

1. Commissions were charged at rates specified by the Commercial Law League.

2. Whether Windsor or its counsel authorized Rogers to continue to act after the bankruptcy was filed is a disputed issue of fact. Windsor asserts that no such authority was given. Rogers alleges that Windsor induced it to continue its activities and happily accepted the benefits derived therefrom. This issue is irrelevant to a decision on the motion for partial summary judgment since there is an absolute rule in the Third Circuit requiring professional persons to seek court approval before rendering services.

be entitled to compensation from the estate. We agree.

Section 330 of the Bankruptcy Code provides the statutory authority for the compensation of attorneys, accountants, and other professionals, who are employed by a trustee or debtor-in-possession. It provides:

(a) After notice to any parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a) (1983)[3].

Thus, compensation of a professional person is conditioned on employment of that professional in accordance with § 327 of the Code, which states:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (1983).

The approval of the Bankruptcy Court of the employment of a professional person is expressly required by the Code to assure that such persons are disinterested and to enable the court to maintain control of costs. In the case of *In re Sapolin Paints, Inc.*, 38 B.R. 807 (Bankr.E.D.N.Y. 1984), the purpose of § 327(a) was set forth as follows:

The rule prohibiting compensation for unauthorized services must be enforced in order to "maintain control of costs." *In re Garland Corp.*, 8 B.R. 826 (Bkrtcy. D.Mass.1981). "Otherwise the necessary power of the Court to ensure that assets of the estate are not wasted would be undermined." *In re Morton Shoe Companies, Inc.*, 22 B.R. 449, 451 (Bkrtcy.D. Mass.1982); *In re Fiberglass Specialty Co., Inc.*, 12 B.R. 119, 121 (Bkrtcy.D. Minn.1981). "Only in this way can claims be avoided for volunteered services which may or may not have been such as what would have (been) authorized." *In re Eureka Upholstering Co.*, 48 F.2d 95, 96 (2d Cir.1931).

We are not dealing here with a mere technicality. The necessity for an order affords an opportunity to interested parties to object to the requested expenditures as unnecessary ...

*Id.* at 817.

In interpreting a provision analagous to § 327(a) under the Bankruptcy Act, the United States Court of Appeals for the Third Circuit adopted a strict rule: In the absence of an order of the Bankruptcy Court authorizing employment, an attorney or other professional retained by a trustee or by a debtor-in-possession is not entitled to any compensation. *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203 (3d Cir.1969), cert. denied, 396 U.S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969); *In re Calpa Products Co.*, 411 F.2d 1373 (3d Cir.1969).

We have no doubt that the rule enunciated in *Hydrocarbon Chemicals* applies equally to cases under the Code. In *In re Lewis*, 30 B.R. 404 (Bankr.E.D.Pa.1983), we denied counsel fees to an attorney who did not file his application for approval of employment until twenty (20) months after

---

**3.** The substantive amendments of the Bankruptcy Amendments and Federal Judgeship Act of 1984 are not applicable to the instant proceeding which was commenced prior thereto.

the Chapter 11 petition was filed, and only then because this Court entered a show cause order.

**4.** Various courts have addressed the issue of *nunc pro tunc* authorization of a professional employed pursuant to § 327(a). Some courts have held that *nunc pro tunc* fees may be awarded under exceptional circumstances. *See e.g., In re Triangle Chemicals, Inc.* 697 F.2d 1280 (5th Cir.1983); *In re Laurent Watch Co.,* 539 F.2d 1231 (9th Cir.1976). We do not believe that a bankruptcy court in the Third Circuit has the power to approve employment of a professional *nunc pro tunc* in order to compensate that professional with estate funds for services rendered without court authorization. Some commentators have classified our decision in *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768 (Bankr.E.D.Pa.1984), with these other decisions allowing *nunc pro tunc* fee awards under exceptional circumstances. Therefore, we take this opportunity to clarify our holding in that case.

In *Bible Deliverance,* we ordered the debtor to pay attorneys' fees to counsel for a creditors' committee. Included within the fee award was compensation for 16.2 hours of services rendered to the committee prior to the entry of a court order appointing counsel. Counsel for the debtor objected to the 16.2 hours on the basis of the *Hydrocarbon Chemicals* case, *supra,* 411 F.2d at 203. We found that the rule in *Hydrocarbon Chemicals* did not apply to the scenario presented because *Bible Deliverance* was not only distinguishable from the usual bankruptcy case, it was unique. The unique aspect of the *Bible Deliverance* case was that all creditors' claims had been paid in full (100%) before the issue of counsel fees arose. Any increase in the amount of fees awarded to counsel would be assessed against the debtor *but* would not result in a diminution of the fund available for distribution to creditors. This scenario is very different from the typical bankruptcy case where there is only a limited fund available for payment of both administrative costs and creditors' claims. We have previously analogized the limited fund available in a bankruptcy case for payment of counsel fees and creditors' claims to the fund available in "fund-in-court" or "common-fund" cases. Under the "equitable-fund", "fund-in-court", or "common-fund" doctrine, federal courts have allowed attorneys, whose efforts result in the creation, preservation, or increase of a fund in which others have a common interest, to be compensated from that fund. The purpose of the doctrine is to avoid the unjust enrichment of those who benefit from the fund that is created, protected or increased by the litigation, and who otherwise would bear none of the litigation costs. *See Trustees of the Internal Improvement Fund v. Greenough,* 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1881). The doctrine also derives

This Court is without the power to make exceptions to the rule even if the professional has rendered valuable services to the trustee or debtor-in-possession.[4] The Court from the common law concept that a trustee who is under a duty to act for others is entitled to be reimbursed from that fund for expenses incurred in administering the trust. There is a greater need for the judge to act as a fiduciary for the beneficiaries of the fund in a "fund-in-court" case than in a statutory fee case because few, if any, of the beneficiaries of the litigation are before the court at the time the fees are set. Judicial scrutiny is necessary because the attorneys' fees will be paid out of the fund established by the litigation, in which the defendant no longer has any interest, and the financial interests of the attorneys are now in conflict with those of the fund beneficiaries.

In a bankruptcy case, the trustee or debtor-in-possession holds a fund in trust for the benefit of the creditor body. Attorneys' fees, as well as other costs of administering the estate (i.e., preserving the fund) are paid first from the fund. Thus, in the typical bankruptcy case, as in a "fund-in-court" case, an increase in the amount awarded as counsel fees will result in a diminution of the fund available for the creditors (beneficiaries of the fund).

The purpose of the rule against *nunc pro tunc* fees, as we see it, is to prevent unwarranted intrusions of these trust fund monies. In *Bible Deliverence,* there was no need to be concerned about an unwarranted invasion of the fund because attorneys' fees were to be paid after all creditors' claims had been paid in full. The fund was not limited in that case. Therefore, there was no reason to apply the rule established by the *Hydrocarbon Chemicals* Court. Furthermore, the principal of the debtor had attempted to use the bankruptcy system to delay, hamper, and possibly defraud the creditors. Without the efforts of George Pierce, Esquire, counsel for the creditors' committee, creditors surely would not have received a 100% recovery.

We believe that efforts by counsel to recapture monies which are rightfully part of the trust fund (i.e., property of the estate) should be liberally rewarded, and so we stated in *Bible Deliverance.* In many ways, the role of the bankruptcy judge is that of a fiduciary for creditors, just as the trustee is a fiduciary for creditors. We are compelled to see that the fund is distributed fairly and equitably, and that the costs of preserving the fund do not, in effect, wipe it out.

The final distinction to be made between *Bible Deliverance* and the typical *nunc pro tunc* situation was that counsel in *Bible Deliverance* acted promptly in filing an application to be appointed as counsel. Only a brief period of time elapsed between the filing of the application and the actual signing of the order. While

of Appeals stated in *Hydrocarbon Chemicals:*

> It is well-settled that unless counsel have been approved by the court, though their services were of value to the court in a Chapter X proceeding, they must be denied compensation. This Court, speaking through Judge Maris, in *In re National Tool & Mfg. Co.*, 209 F.2d 256, 257 [(3rd Cir.1954)], stated as follows: "It is clear that General Order 44 applies to reorganization proceedings under Chapter X of the Bankruptcy Act. It is equally clear that Mr. Mode was not appointed as an attorney for the trustees of the debtor in the manner required by General Order 44. It is settled that under these circumstances an attorney may not be compensated out of the debtor's estate even though he may have rendered valuable services to the trustees. It follows that the district court was without authority to make the order appealed from." In *In re Progress Lektro Shave Corp.*, 2 Cir. 117 F.2d 602 [(1941)], the court stated, in denying compensation to counsel: "There is no question but that the appellant acted throughout in good faith and a denial to him of compensation is a harsh conclusion. However, the law is unquestionably settled that the order of the district court was correct ...

It cannot be stressed too strongly here that, while the result reached is, as has been indicated above, "a harsh conclusion", nevertheless, counsel who have performed services, especially under Chapter X of this proceeding, should seek the approval of the court for otherwise, as counsel for the debtor, the court

has no control whatsoever over them and it is imperative that their competency, experience and integrity therefor have the approbation of the court. *Cf. United States v. Larchwood Gardens*, 1968, 3rd Cir. 404 F.2d 1108.

411 F.2d at 205–206.

Rogers contends that it is not a professional person within the meaning of § 327(a), therefore, the strict rule against compensation of professionals, who were not authorized to act by the court, is not applicable to it. However, our reading of § 327(a) dictates against such a finding. Included within the class of persons who must seek court approval of their employment are "attorneys, accountants, appraisers, auctioneers, *or other professional persons ...*" (emphasis added). Management consultants, financial consultants, bookkeepers, real estate brokers, private investigators, and architects have been held to be "professional persons" within the meaning of § 327(a). *See e.g., In re WFDR, Inc.*, 22 B.R. 266 (Bankr.N.D.Ga.1982); *In re Schatz Federal Bearings Co.*, 17 B.R. 780 (Bankr.S.D.N.Y.1982); *In re Four Star Music Co., Inc.*, 42 B.R. 191 (Bankr.M.D. Tenn.1984); *In re Pathway, Inc.*, 41 B.R. 400 (Bankr.D.Hawaii 1984); *In re Zeus America Management Consultants, Inc.*, 27 B.R. 853 (Bankr.N.D.Ohio 1983); *In re Holiday Mart, Inc.*, 18 B.R. 212 (Bankr.D. C.Hawaii 1982).

█ The requirement of court approval under § 327(a) extends to any individual or entity that is intimately involved with the administration of the bankruptcy case. *Schatz, supra*, 17 B.R. 780.[5] We hold that

---

ordinarily counsel may want to await the outcome of the application and obtain a signed order before proceeding to render services in a case, urgent matters necessitating immediate action in the *Bible Deliverance* case required counsel to act before obtaining a signed order. Common sense would seem to dictate that counsel should not be penalized by a denial of fees for that very brief period of time between the filing of the application and the signing of the court order, which turned out to be only 16.2 hours. In the typical *nunc pro tunc* situation, the period of time is usually several months, possibly even years, before counsel wakes up, realizing

that he or she never obtained a court order authorizing employment, and then seeks to obtain a *nunc pro tunc* order.

We hope that future commentators and courts citing our decision in *Bible Deliverance* will not classify it with other decisions making an exception to the rule against *nunc pro tunc* fee awards without noting the unique aspects of that case which prompted our finding that the rule did not apply.

5. One court has held that an individual who does not perform a central role in the administration of the bankruptcy case, such as a maritime engineer, may be hired without court ap-

a collection agency falls within the meaning of a professional person under § 327(a) and must seek court approval of its employment.

The services performed by Rogers were clearly of a professional nature. Court approval should have been sought before Rogers rendered services to the debtor-in-possession, Windsor, particularly in light of the fact that Rogers retained local counsel on Windsor's behalf as part of its collection efforts. The collection of accounts receivable has been central to the administration of this case. The importance of the collection of receivables is illustrated by the fact that the debtor-in-possession has filed approximately 1,600 adversary actions against its account debtors. In order to achieve the collection of receivables, the debtor-in-possession retained a management consultant whose employment was approved by the Court on December 1, 1982. In effect, Rogers was performing the same role as that performed by the management consultant in this case without having obtained prior court approval.

In conclusion, we will grant partial summary judgment in favor of Windsor on Windsor's complaint for turnover because we find that Windsor is entitled to judgment as a matter of law.

Ronald H. Sargis, Hefner, Stark & Marois, Sacramento, Cal., for Laura & Thomas Doucette.

Joseph W. Tillson, Feldman, Shaw & DeVore, South Lake Tahoe, Cal., for debtors.

proval. *In re Seatrain Lines, Inc.,* 13 B.R. 980 (Bankr.S.D.N.Y.1981).