### In re KEENE CORPORATION, Debtor.

### Bankruptcy No. 93 B 46090(SMB).

United States Bankruptcy Court, S.D. New York.

May 7, 1997.

---

Abowitz & Rhodes, P.C., Oklahoma City, OK (Murray E. Abowitz, Janice M. Dansby, of counsel), for Glenn W. Bailey.

John J. Preefer, New York City, Levy, Phillips & Konigsberg, L.L.P., New York City, (Stanley J. Levy, of counsel), for Keene Creditors Trust.

## AMENDED MEMORANDUM DECISION REGARDING ADMINISTRATIVE CLAIM OF GLENN W. BAILEY

STUART M. BERNSTEIN, Bankruptcy Judge.

Glenn W. Bailey, the debtor's former president and chairman of the board, seeks to recover, as an administrative expense under 11 U.S.C. § 503(b)(1)(A), the legal fees he paid to his personal attorneys for services rendered to him during this case. The debtor never retained these attorneys, and Bailey does not contend that he (or they) made a substantial contribution to the case. Instead, he argues that he relied upon the advice and counsel of his personal attorneys to fulfill his fiduciary duties to the debtor after he lost confidence in the debtor's retained counsel, Berlack Israels & Liberman ("Berlack").[1] I conclude that Bailey's legal fees were unnecessary to the preservation of the estate, and are not entitled to an administrative priority under Section 503(b)(1)(A).

## BACKGROUND

The debtor filed this chapter 11 case on December 3, 1993, and confirmed its plan on June 14, 1996. At the time of the filing, and until March 1996, Bailey served as the debtor's president and chairman of the board. Thereafter, he served as a director. Prior to the commencement of the bankruptcy, Bailey was a defendant in three actions relating to the debtor. Murray E. Abowitz, Esq., a shareholder in Abowitz & Rhodes, P.C., represented Bailey in all three actions, and continued to represent Bailey personally throughout the bankruptcy on these and other matters. On the other hand, the debtor retained Berlack pursuant to 11 U.S.C. § 327 to represent it in the bankruptcy case.[2]

As the bankruptcy case proceeded, the relationship between Bailey and Berlack grew worse. According to Bailey's testimony,[3] he came to disagree with and distrust Edward S. Weisfelner, Esq., the Berlack partner in charge of the representation, and began to

---

1. Bailey also seeks reimbursement for certain costs and expenses incurred primarily in defending a lawsuit brought against him by the Official Committee of Unsecured Creditors (the "Committee"). This memorandum decision does not address that aspect of his claim.

2. The debtor had also retained a second law firm, Gainsburg & Hirsch. Gainsburg & Hirsch withdrew after a few months. Thereafter, Berlack served as sole counsel for the debtor.

3. I conducted an evidentiary hearing on April 29, 1997 regarding Bailey's contention that the debtor had agreed to reimburse his expenses, including his legal fees, relating to the debtor's business. I found that no such agreement existed, apart from whatever indemnification rights Bailey had under the debtor's certificate of incorporation or section 145 of the Delaware General Corporation Law. My reasons were set forth on the record at the conclusion of the hearing, and I will not repeat them here.

rely upon Abowitz and his other personal attorneys [4] to assist him in performing his fiduciary duties as an officer and director of the debtor. As a result, and according to Mr. Bailey, Abowitz became involved in the aspects of the case normally committed to the debtor's retained counsel. *See* JPTO at pp. 15–17. At the same time, Abowitz continued to represent him personally. In particular, Abowitz represented Bailey when the Committee sued him, and when the board of directors purported to fire Bailey as president.

As a result of all this activity, Bailey paid substantial legal expenses to his personal attorneys. The debtor's certificate of incorporation, as well as section 145 of the Delaware General Corporation Law, authorize the debtor to indemnify present and former officers under certain circumstances.[5] Article Fifteenth, section B(1), of the certificate of incorporation provides, in pertinent part, as follows:

> Each person who was or is a party or is threatened to be made a party to *or is involved in* any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she . . . is or was a director or officer of the Corporation . . . shall be indemnified and held harmless by the Corporation to the fullest extent permitted by the Delaware General Corporation Law. . . . . [Emphasis added.]

During the case, Bailey or Abowitz either hinted at or actually requested reimbursement from the debtor on several occasions. All of these hints or requests pertained to Abowitz (and in some cases, the other attorneys') role as actual or potential defense counsel to Bailey. Bailey never asked the debtor to reimburse the legal fees he incurred for advice in performing his roles of officer and director. *See, e.g.,* Trust Exhibits ("TX") C, D, E; Bailey Exhibits 3, 4, 6.[6]

On or about July 29, 1996, and prior to the administrative claim bar date, Bailey submitted his Application for Allowance of Administrative Expense. (TX A.) The body of the application does not set forth a liquidated amount, but an attachment indicates that as of the end of April 1996, his reimbursable fees and expenses were approximately $117,000.00. His administrative expense request does not seek payment of the fiduciary legal fees he now requests. Rather, it is limited to reimbursement of those expenses incurred in defending adversary proceedings brought against him in the case.

After Bailey filed his request, the Committee objected, and the parties engaged in discovery aimed at defining the amount and scope of the claim. It was only then that Bailey amplified his claim to include his fiduciary (as opposed to litigation) legal fees and expenses. The parties have stipulated that his fees and expenses fall into five categories:

| Category | Expense |
|---|---|
| Assistance in Presentation of Alternative Legal Approaches to Viable Plan of Reorganization, Attendance at Meetings of the Debtor's Board of Directors and Provision of Advice in Other Areas Concerning Administration of the Debtor's Estate | $37,227.42 |
| Preparation of the "Misappropriations Lawsuit" | $ 903.90 |
| Modifications and Objections to the Debtor's Proposed Disclosure Statement | $16,328.81 |
| Defense of <u>Creditors' Committee v. Bailey</u> | $39,801.96 |
| Representation and Counsel at Regularly Scheduled Meetings of the Debtor's Board of Directors and at Various Other Times in Connection With Such Meetings | $ 5,171.57 |

JPTO at 12. These legal fees and expenses total $99,433.66.

---

4. In addition to Abowitz & Rhodes, Bailey personally retained Walter Conston Alexander & Green, P.C., Fuller Taub & Pomeroy and Connor & Winters. Proposed Joint Pre-Trial Order ("JPTO") at 13.

5. The Delaware General Corporation Law permits but does not require indemnification. Since the debtor's certificate of incorporation concededly provides broader indemnification rights, I will limit the discussion to its provisions.

6. These exhibits were received in evidence at the April 29, 1997 hearing.

## DISCUSSION

As a rule, attorneys who represent fiduciaries must be retained by court order pursuant to 11 U.S.C. § 327 before they may seek compensation. Two reasons justify the rule. First, it discourages voluntary services, and second, it permits the court and parties to review potentially disqualifying conflicts or relationships unaffected by the pressure which arises in the attorney's favor after the services have already been rendered. *Cf. In re 245 Assocs., LLC,* 188 B.R. 743, 749–50 (Bankr.S.D.N.Y.1995) (discussing *nunc pro tunc* retention). Attorneys retained under 11 U.S.C. § 327 may be awarded Compensation under 11 U.S.C. § 330(a), and the award is entitled to administrative expense priority under 11 U.S.C. § 503(b)(2). Nevertheless, a party in interest may, under certain circumstances, recover his own legal fees under 11 U.S.C. § 503(b)(3) and (4) [7] in the absence of a retention order. To the extent that these provisions might be relevant to this matter, they would permit Bailey to recover legal fees and expenses if he made a "substantial contribution" to the case.

Neither the Abowitz firm nor any of Bailey's other lawyers were ever retained to represent the debtor. During the chapter 11, Bailey discussed the possibility of formal retention with Weisfelner who advised against it, suggesting that the Committee would oppose the retention, and the application would likely result in the appointment of a trustee. (Transcript of hearing, held Mar. 11, 1997, at 11.) In addition, Bailey does not seek to recover his fees on the theory that he made a "substantial contribution" to the case. JPTO at 13. Hence, subsections 503(b)(2), (b)(3) and (b)(4) are not applicable.

■ Instead, Bailey requests reimbursement under 11 U.S.C. § 503(b)(1)(A) which allows, as administrative expenses, "the actual, necessary costs and expenses of preserving the estate...." The purpose of this provision is to provide an incentive to creditors and others to do business with an insolvent entity. 4 Lawrence P. King, *et al., Collier on Bankruptcy* ¶ 503.06[2], at 503–24 (rev. 15th ed.1997). To qualify as an administrative expense under section 503(b)(1)(A), the expense (1) must arise out of a postpetition transaction between the debtor-in-possession and the creditor and (2) relate to consideration both supplied to and beneficial to the postpetition estate's operation of its business. *In re New York Trap Rock Corp.,* 137 B.R. 568, 572 (Bankr.S.D.N.Y.1992); *cf. In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976) (discussing section 64(a)(1) of the former bankruptcy act) Administrative priorities must be narrowly construed to foster the paramount bankruptcy principle of equality of distribution. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 100 (2d Cir.1986); *In re New York Trap Rock Corp.,* 137 B.R. at 572.

■ Where, as here, the certificate of incorporation imposes an indemnification obligation on the corporate debtor, the corporate director or officer may, under certain circum-

---

7. Section 503(b) allows, *inter alia,* as an administrative expense

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(a) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. ...

stances, recover his legal fees as an administrative expense under section 503(b)(1)(A) Indemnification is necessary and desirable to encourage capable managers to serve without fear or risk of liability for actions taken in good faith and in the interests of the corporation. *See Wisener v. Air Express Int'l Corp.,* 583 F.2d 579, 583 (2d Cir.1978). Corporate fiduciaries generally rely on the expectation of indemnification, and may recover their legal fees and expenses on an administrative basis, at least to the extent they arise from defending postpetition conduct as an officer or director. *See In re Heck's Properties,* 151 B.R. 739, 766–68 (S.D.W.Va.1992); *In re Baldwin–United Corp.,* 43 B.R. 443, 454 (S.D.Ohio 1984); *cf. In re Schatz Fed. Bearings Co.,* 17 B.R. 780, 784 (Bankr.S.D.N.Y. 1982) (debtor obligated to pay directors' legal fees where they were not covered by insurance to protect them against individual liabilities arising out of their services as directors).

The certificate of incorporation suggests that the debtor' 5 indemnification obligation is limited to actual or threatened actions against an officer or director. Nevertheless, Bailey correctly points out that it can also apply to affirmative litigation brought by the officer or director. In *Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339 (Del.1983), a slate of incumbent directors commenced a proxy contest against a rival slate of incumbent directors. In their suit, the plaintiff directors alleged that their rivals had breached their fiduciary duties by interfering with the corporation's audit committee, and sought to compel the rival directors to attend board meetings. *Id.* at 341. The plaintiffs subsequently sought indemnification under provisions of articles of incorporation substantially identical to the debtor's in this case, as well as section 145 of Delaware's General Corporation Law. The Supreme Court of Delaware concluded that the directors could recover the legal costs of their offensive litigation under the circumstances. They had commenced the litigation to protect the independence of the audit committee and to compel the rivals to attend board meetings, and hence, "to uphold the plaintiffs' honesty and integrity as directors." *Id.* at 344 (internal quotation marks omitted).

■ Even if the certificate of incorporation required the debtor to indemnify Bailey for non-litigation, fiduciary legal fees—a point I do not decide—I nonetheless conclude that these fees were not necessary to the preservation of the debtor's estate. Hence, they cannot be recovered under Section 503(b)(1)(A). The services at issue duplicated or overlapped with those provided by debtor's retained counsel. If Bailey was dissatisfied with Berlack, he should have replaced that firm with another firm. If, on the other hand, the board refused to go along with him, he cannot circumvent the board's refusal by hiring a personal lawyer to perform the duties of debtor's counsel, and then ask the debtor to pay for it.

Further, Bailey's theory would open the floodgates to costly administrative expenses for legal fees. Every director could insist that the estate pay for a personal lawyer to enable him to perform his fiduciary duties. In the same vein, each director could insist on his own accountant and financial advisor, especially in a mega case involving the sale of assets or the ongoing business of the debtor. Further, permitting recovery for these types of services under Section 503(b)(1)(A) would eviscerate the "substantial contribution" requirement, excising it from the Bankruptcy Code.[8]

Finally, I cannot ignore Bailey's conduct in this case. As noted, he chose not to pursue Abowitz's retention on behalf of the debtor because he feared the consequences. In addition, while Bailey raised the issue of indemnification throughout the case, he never argued that he should be indemnified for hiring Abowitz or anyone else to shadow Berlack or take over its duties. He now seeks to do, through the back door, what he did not, could hot and dared not do through the front. Under the circumstances, he is not entitled to charge the estate for the personal legal

---

**8.** Under Section 503(b)(4), it would appear that an entity making a substantial contribution in a case could not recover for its financial advisor fees since this section limits recovery for professional services to attorneys and accountants.

fees he incurred in the performance of his fiduciary duties as an officer and director of the debtor.

This same conclusion extends to his objections to the disclosure statement. Although these services are closer to the offensive litigation discussed in *Hibbert*, I conclude that they should not be compensable in the absence of satisfying the "substantial contribution" test. Otherwise, every director, again, would be free to hire a personal attorney, at the estate's expense, to peruse the disclosure statement.[9] Furthermore, the filing of objections cannot serve as a bright line for dividing the compensable from the non-compensable. If the estate had to compensate attorneys because they filed objections, they would file objections to ensure their rights to compensation.

Accordingly, I sustain the objections to Bailey's administrative expense request, except to the extent of his defense of the Committee's lawsuit and the "Misappropriation" lawsuit referred to above. The Trust has attacked the reasonableness of the former; the basis of the claim for the latter is not clear. Counsel are directed to contact chambers to schedule an evidentiary hearing regarding the amount and reasonableness of the costs incurred in defending against the Committee's lawsuit. At that time, the parties and the Court will consider the disposition of the "Misappropriation" claim.

9. In fact, there would not be any justification to limit this rule to disclosure statements. Many significant motions come before the bankruptcy court which any fiduciary could arguably want to review and comment upon.